RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0137p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

WILLIAM R. BARRETT and SANDRA BARRETT,
*Plaintiffs-Appellants/
Cross-Appellees,*

*v.*

JP MORGAN CHASE BANK, N.A., as successor by
merger to BANK ONE, N.A.,
*Defendant-Appellee/
Cross-Appellant.*

Nos. 05-5035/5146

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 03-00034—Joseph M. Hood, Chief District Judge.

Argued: January 27, 2006

Decided and Filed: April 18, 2006

Before: GUY, SUTTON, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** Katherine K. Yunker, YUNKER & ASSOCIATES, Lexington, Kentucky, for Appellants. Dustin E. Meek, TACHAU, MADDOX, HOVIOUS & DICKENS, Louisville, Kentucky, for Appellee. **ON BRIEF:** Katherine K. Yunker, Katherine Shelby Sanford, Benjamin D. Allen, YUNKER & ASSOCIATES, Lexington, Kentucky, for Appellants. Dustin E. Meek, Phillip A. Martin, TACHAU, MADDOX, HOVIOUS & DICKENS, Louisville, Kentucky, James M. Meredith, JP MORGAN CHASE LEGAL DEPARTMENT, Dallas, Texas, for Appellee.

_____

## OPINION

_____

SUTTON, Circuit Judge. The Truth in Lending Act, Pub. L. No. 90-321, 82 Stat. 146 (codified as amended at 15 U.S.C. § 1601, *et seq.*), "was enacted to promote the informed use of credit by consumers by requiring meaningful disclosure of credit terms," *Begala v. PNC Bank, Ohio, N. A.*, 163 F.3d 948, 950 (6th Cir. 1998). "[W]hen a loan made in a consumer credit transaction is secured by the borrower's principal dwelling," the Act permits the borrower to "rescind the loan agreement," *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 411 (1998), up to three business days after the transaction, *see* 15 U.S.C. § 1635(a). When the lender "fails to deliver certain forms or to

disclose important terms accurately" to the borrower, the Act extends the borrower's right to rescind the transaction to three years. *Beach*, 523 U.S. at 411. And when the Act permits borrowers to rescind "the transaction," 15 U.S.C. § 1635(a), it permits them not only to remove the security interest on their home but also to recover certain fees incurred in the transaction, *id.* § 1635(b).

Seeking to benefit from declining interest rates, William and Sandra Barrett refinanced a mortgage on their home several times in 2000 and 2001. In May 2000 and again in January 2001, the Barretts borrowed money from Bank One, securing the loan in each instance with a security interest in their home. In May 2001, they refinanced their obligations with Bank One with a loan from another lender, prompting Bank One to release its security interest in the Barretts' home.

Roughly two years later, the Barretts complained that Bank One had violated the Act's disclosure requirements in lending them money in May 2000 and January 2001 and sought to rescind both transactions. Bank One refused, claiming that both loans had been refinanced and that both security interests had been removed, leaving nothing for the bank to rescind. The district court agreed with the bank. We reverse because nothing in the legislation or its implementing regulations says that the act of refinancing extinguishes a borrower's unexpired right to rescind a loan transaction and because the right to rescind a transaction under the Act not only gives consumers the right to release the security interest in their home but also gives them the right to recover certain fees incurred in the transaction.

I.

In 1989, the Barretts bought their home in Lexington, Kentucky, relying in part on funds obtained through a loan from Cumberland Bank. They eventually refinanced this loan with National City Bank. And in March 2000, they upgraded their home's furnace and electrical system through a loan from a local governmental housing assistance program.

Shortly thereafter, the Barretts borrowed money from Bank One (now JP Morgan Chase) through two loan transactions that form the crux of this dispute. In May 2000, Bank One helped the Barretts refinance the National City Bank loan. The refinancing called for the Barretts to sign a $20,864.40 note, which paid off the balance on the earlier mortgage and covered a $2,404.40 credit life insurance premium. Bank One violated the Truth in Lending Act in processing this loan, the Barretts claim, most notably by allegedly telling them that they had to purchase credit life insurance to obtain the loan.

In January 2001, the Barretts consolidated and refinanced all of their outstanding debts—including the May 2000 loan from Bank One and the March 2000 local governmental loan—with a new loan from Bank One. As a result of this refinancing, Bank One released all prior security interests it held in the Barretts' home and replaced them with a new mortgage on the Barretts' residence. According to the Barretts, Bank One violated the Act's disclosure requirements in processing this loan because it did not timely give the Barretts copies of the closing documents and because Bank One's notice of their three-day right to rescind the loan transaction was inaccurate.

In May 2001, the Barretts refinanced the January 2001 Bank One loan with a new loan from ABN AMRO Mortgage Group, Inc. As a result of this last refinancing, the parties agree, Bank One released all of its security interests in the Barretts' home.

In September 2002, the Barretts asked Bank One to rescind the January 2001 loan transaction, and in January 2003 they asked the bank to rescind the May 2000 loan transaction. The bank refused to rescind either transaction, and the Barretts filed this lawsuit in federal court on January 22, 2003. In doing so, they sought relief (1) under the Truth in Lending Act; (2) under state

law for fraud and misrepresentation; and (3) under the Kentucky Consumer Protection Act (KCPA), Ky. Rev. Stat. § 367.110, *et seq.*

As pertinent here, the district court granted Bank One summary judgment on the Barretts' rescission claims under the Truth in Lending Act. It held that their right to rescind was extinguished by the refinancing of all of the Bank One loans, leaving no security interest on their home for the bank to rescind. As the district court later explained in denying plaintiffs' Rule 59 motion to alter the judgment:

> The [Barretts] . . . were not entitled to rescission because both loans with [Bank One] were paid in full, through refinancing with another company, and [Bank One] no longer had a security interest in [the Barretts'] home. . . . Th[is] Court [has] adopted the reasoning of *King v. State of California*, 784 F.2d 910, 913 (9th Cir. 1986), in holding that rescission was no longer possible after refinancing. . . . [The] prepayment penalties, finance charges and other charges . . . are incidents of rescission not available until the right of rescission is triggered.

D. Ct. Op. at 3–4 (Dec. 7, 2004). Having dismissed all of the federal claims in the case, the district court ultimately declined to exercise supplemental jurisdiction over the Barretts' state-law claims.

## II.

### A.

To ensure that "consumer[s] will be able to compare more readily the various credit terms available to [them] and avoid the uninformed use of credit," 15 U.S.C. § 1601(a), the Truth in Lending Act "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights," *Beach*, 523 U.S. at 412. *See also* 12 C.F.R. § 226.1(b) ("The purpose of this regulation is to promote the informed use of consumer credit by requiring disclosures about its terms and cost.").

Several provisions of the Act further these disclosure objectives. "[W]hen a loan made in a consumer credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan agreement," *Beach*, 523 U.S. at 411 (citation omitted), "until midnight of the third business day following the consummation of the transaction or the delivery of [the disclosures required under the Act], whichever is later," 15 U.S.C. § 1635(a). In the event a bank does not comply with the Act's disclosure requirements, the three-day right to rescind becomes a three-year right to rescind, which expires three years "after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." *Id.* § 1635(f).

Like the district court, Bank One reasons that the Barretts extinguished their statutory right to rescind the May 2000 and January 2001 loan transactions when they refinanced these loans because "there was nothing left to rescind after Bank One had released all security interests it had once held in [the Barretts'] property." Bank One Br. at 15. The Barretts respond that rescinding a loan transaction requires unwinding the transaction in its entirety and thus requires returning the borrowers to the position they occupied prior to the loan agreement, which can be accomplished only by voiding the security interest *and* returning "prepayment penalties. . . , mortgage filing fees, loan transaction fees, appraisal fees, and closing costs." Barrett Br. at 10–11.

The Barretts, it seems to us, have the better argument. "[E]xcept as otherwise provided in this section," the Act says that the borrower "shall have the right to rescind the transaction." 15 U.S.C. § 1635(a). It then says that "[w]hen an obligor exercises his right to rescind . . . , he is not liable for any finance or other charge, and any security interest given by the obligor . . . becomes void upon such a rescission" and that "the creditor shall return to the obligor any money or property

given as earnest money, downpayment, or otherwise." *Id.* § 1635(b).  By its terms, then, the Act gives the borrower who rescinds an eligible loan transaction the right to void the security interest *and* the right to recover statutorily identified finance charges incurred in the transaction.

Nothing about the word "rescission," moreover, limits its applicability to the removal of a security interest alone.  While neither the Act nor the implementing regulations define the term, common definitions of "rescission" indicate that it covers more than simply removing a security interest created through a loan.  According to one dictionary, the term means "[a] party's unilateral unmaking of a contract," which "restores the parties to their precontractual positions." *Black's Law Dictionary* 1308 (7th ed. 1999).  According to another, the term means "an act of cutting off" or "an act of rescinding, annulling, or vacating or of cancelling or abrogating (as by restoring to another party to a contract or transaction what one has received from him)." *Webster's Third New International Dictionary* 1930 (2002); *see also id.* (second definition of "rescind" is: "[T]o abrogate (a contract) by tendering back or restoring to the opposite party what one has received from him.").

Consistent with these definitions, the statute and regulations refer to a "right to rescind the *transaction*," not just a right to rescind the security interest.  15 U.S.C. § 1635(a) (emphasis added); *see also id.* § 1635 (entitled: "Right of rescission as to certain *transactions*") (emphasis added); 12 C.F.R. § 226.23 ("In a credit transaction in which a security interest is or will be retained or acquired . . . [the] consumer . . . shall have the right to rescind *the transaction*.") (emphasis added). And, most importantly, § 1635(b) not only allows a rescinding borrower to void the security interest but also requires the creditor to return other fees generated by the loan transaction, namely "any money or property given as earnest money, downpayment, or otherwise." 15 U.S.C. § 1635(b); *see also id.* ("When an obligor exercises his right to rescind . . . he is not liable for any finance or other charge, *and* any security interest given by the obligor . . . becomes void upon such a rescission.") (emphasis added); 12 C.F.R. § 226.23(d)(2) (requiring the creditor upon rescission to return "any money or property that has been given to anyone in connection with the transaction").

The Act and its implementing regulation (Regulation Z, 12 C.F.R. § 226, *et seq.*) also identify events that extinguish the right to rescind, and yet none of those events occurred here. Regulation Z says that "the right to rescind shall expire" (1) "3 years after consummation," (2) "upon transfer of all of the consumer's interest in the property," or (3) "upon sale of the property, whichever comes first."   12 C.F.R. § 226.23(a)(3); *see* 15 U.S.C. § 1635(f).  Nowhere do the legislation or regulations add that the act of refinancing an existing loan transaction by itself cuts off the right of rescission.  Given that "the sale of the property" cuts off the right to rescind, it seems particularly noteworthy that neither Congress nor the agency provided that an analogous event—the refinancing of the loan—would cut off the right to rescind.  *See Cavanaugh v. Cardinal Local Sch. Dist.*, 409 F.3d 753, 756 (6th Cir. 2005) (noting "that the mention of one thing implies the exclusion of another").

Nor do any of the Act's exceptions to the right of rescission foreclose the rescission remedy the Barretts seek.  The Act lists four "exempted transactions":  (1) a "residential mortgage transaction," which is described as a financing agreement arising from "the acquisition or initial construction" of a home, 15 U.S.C. § 1635(e)(1); *id.* § 1602(w); (2) a "refinancing" or loan "consolidation" transaction of the principal balance with no new advances "by the same creditor secured by an interest in the same property," *id.* § 1635(e)(2); (3) "a transaction in which an agency of a State is the creditor," *id.* § 1635(e)(3); and (4) "advances under a preexisting open end credit plan if a security interest has already been retained" and the advances are in connection "with a previously established credit limit" for the plan, *id.* § 1635(e)(4).  The parties agree that none of the exemptions applies to the May 2000 transaction.  The parties also agree that the January 2001 transaction was a refinancing (of the May 2000 transaction) "by the same creditor secured by an interest in the same property," *id.* § 1635(e)(2), and that the right to rescind the January 2001 transaction extends only to the "new" money portion of the January 2001 transaction, 12 C.F.R.

§ 226.23(f)(2) ("[The right to rescind does not apply to:]  A refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling.  The right of rescission shall apply, however, to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation.").  That the right to rescind the January 2001 transaction covers only the "new" portion of the transaction suggests that the "old" portion (the subject of the May 2000 loan transaction) may still be rescinded despite the intervening refinancing.  *See In re Steinbrecher*, 110 B.R. 155, 166 n.20 (Bankr. E.D. Pa. 1990) (recognizing that a refinancing by the same lender that is secured by the same property and includes an advance of additional funds may be rescinded only to the extent that "new value [has been] provided to the borrower [ ] implies that the borrower may [ ] rescind the prior transaction if such election is made timely and there is just cause to so rescind").

Allowing the right of rescission to be exercised after a refinancing also comports with the statutorily identified purpose of the Act—"to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."  15 U.S.C. § 1601(a).  The preservation of the right prevents a refinancing, even a refinancing prompted by the inadequately disclosed terms of an earlier loan or by the refusal of the bank to rescind the earlier loan, from insulating lenders from responsibility for their noncompliance.  Echoing the point, the Act does not lightly allow even the borrower to waive the right to rescind.  *See id.* § 1635(d) (right to rescind cannot be waived by borrower, except in a bona fide financial emergency).  And while the release of the security interest from the initial loan removes one harm to the borrower, it does not account for another harm to the borrower (the fees and other charges paid by a consumer to the lender) that arises from the bank's failure to facilitate the borrower's "compar[ison of] . . . the various credit terms available."  *Id.* § 1601(a).

While the history of the legislation does not speak directly to this point, it does indicate that the right of rescission was added to the proposed bill to allow the borrower time to "reconsider" the transaction.  S. Rep. 96-73, at 14, *as reprinted in* 1980 U.S.C.C.A.N. 280, 292; *see* 114 Cong. Rec. 1610–11 (1968) (amendments offered by Rep. Cahill and his accompanying statement).  What had initially been proposed as a three-day waiting period in initial drafts of the legislation became a three-day right to rescind, during which the borrower could "study and investigate the contemplated seriousness of the obligations" that she had undertaken rather than those she might undertake.  114 Cong. Rec. 1611 (1968).  Instead of delaying the transaction, the Act created a "cooling-off period" that effectively froze the transaction in time and ensured that the borrower would have ample opportunity to reconsider the consequences of taking on this debt after full disclosure of its terms.  *See* 15 U.S.C. § 1635; 12 C.F.R. § 226.23(a)(3).  And when the bank fails to disclose adequately the terms of that loan, the three-day right of rescission becomes a three-year right of rescission.  Just as no one denies that the right of rescission allows the borrower to obtain the transaction charges incurred when the right is exercised within three days of the loan, it is difficult to understand why the same right should not cover those same transaction charges when it is exercised within three years of the loan, whether a refinancing has intervened or not.  In both settings, the borrower's right to "reconsider" the transaction encompasses a right to return to the status quo that existed before the loan.

Bank One argues that this conclusion "confuse[s] the incidents of rescission with the right to rescind itself."  Bank One Br. at 17.  But a distinction between the right to rescind and the "incidents" of rescission appears nowhere in the statute or regulations, to say nothing of traditional definitions of the term.  The Act, rather, creates two *statutory* incidents of rescission, one of which is the removal of the security interest, the other of which is the return of the statutorily identified finance charges.  The bank offers no more reason for saying a refinancing cuts off the right to receive the return of these finance charges than for saying a return of the finance charges cuts off the right to rescind.  Nor can the bank credibly argue that finance charges are non-essential incidents

to the transaction, as suggested by the fact that this was not a complimentary refinancing and presumably rarely would be.

No doubt, the imposition of a security interest as part of the loan transaction is necessary for the right of rescission to attach to a transaction—what in the words of the regulations "giv[es] rise" to the right.  12 C.F.R. § 226.23(d)(1); 12 C.F.R. § 226, Supp. I, at 226.23; *see also* 15 U.S.C. § 1635(a).  But neither the Act nor the regulations say that the right persists only as long as the security interest does, and of course the right applies to the "transaction," not just the security interest.

Nor does the Ninth Circuit's decision in *King v. California*, 784 F.2d 910 (9th Cir. 1986), prompt us to reach a different conclusion.  The entirety of *King*'s analysis on the point is this: "The loan of March 1981 cannot be rescinded, because there is nothing to rescind.  King refinanced that loan in November 1981, and the deed of trust underlying the March 1981 loan has been superseded." *Id.* at 913.  Not only does *King* of course not bind us, but it does not address the provisions of the Truth in Lending Act that undermine its conclusion.  Only one other court of appeals to our knowledge has considered the issue.  In an equally brief (and unpublished) analysis, the D.C. Circuit offered this drive-by rejection of the *King* approach: "[W]e disagree with [the creditor's] contention that the refinancing of the 1994 loan rendered unavailable [the Act's] statutory rescission remedy, notwithstanding the Ninth Circuit's terse suggestion to the contrary in *King*." *Duren v. First Gov't Mortgage and Investors Corp.*, No. 99-7026, 2000 WL 816042, at *2 (D.C. Cir. June 7, 2000) (per curiam).

Some district courts, it is true, have followed *King*.  *See, e.g.*, *Jenkins v. Mercantile Mortgage Co.*, 231 F. Supp. 2d 737, 745–46 (N.D. Ill. 2002) ("[I]f a loan has been paid off, there is nothing to rescind because the mortgage that the plaintiff wants rescinded has been released and no longer exists.") (internal quotation marks and brackets omitted); *Coleman v. Equicredit Corp. of Am.*, No. 01-C-2130, 2002 WL 88750, at *2 (N.D. Ill. Jan. 22, 2002) ("[T]here is nothing to rescind because the mortgage they want rescinded has been released and no longer exists.").

Most district courts, however, have not.  *See, e.g.*, *McIntosh v. Irwin Union Bank and Trust, Co.*, 215 F.R.D. 26, 30 (D. Mass. May 13, 2003) ("This Court rejects [the] argument that it should apply *King*. . . .  [A]s several courts have noted, a serious flaw in *King*'s approach is that the implementing regulations of [the Truth in Lending Act] never state that paying off a loan in full cuts off unexpired rescission rights."); *In re Wright*, 127 B.R. 766, 770–71 (Bankr. E.D. Pa. 1991) ("*King* . . . reaches [its] conclusion without the analysis that we believe that this issue deserves.") (citation omitted); *In re Steinbrecher*, 110 B.R. at 166 ("[G]iven that the [the Truth in Lending Act] is to be favorably construed toward borrowers, and that provisions such as 15 U.S.C. § 1635(d) and 12 C.F.R. § 226.23(e) limit a borrower's ability to waive his rescission rights, the loss of a borrower's ability to rescind a loan transaction that has later been refinanced, due solely to refinancing, is questionable."); *Payton v. New Century Mortgage Corp.*, Nos. 03-C-333, 03-C-703, 2003 WL 22349118, at *2 & n.1 (N.D. Ill. Oct. 14, 2003) ("Given the absence of . . . analysis by the Ninth Circuit in *King*, this court agrees with the courts which have held refinancing does not bar a suit for rescission."); *Pulphus v. Sullivan*, No. 02-C-5794, 2003 WL 1964333, at *17 (N.D. Ill. Apr. 28, 2003) ("The *King* court's conclusion, however, is at odds with [the Truth in Lending Act] and its regulations."); *Nichols v. Mid-Penn Consumer Disc. Co.*, No. A-88-1253, 1989 WL 46682, at *6 (E.D. Pa. Apr. 28, 1989) (finding unpersuasive the lender's argument that because a loan "was paid in full as a result of [a later] refinancing [the lender] could have done nothing in response to the debtor's demand for rescission" of the refinanced loan), *judgment aff'd*, 893 F.2d 1331 (3d Cir. 1989); *see also Abele v. Mid-Penn Consumer Disc.*, 77 B.R. 460, 464–65 (E.D. Pa. 1987).

The bank, finally, complains that this approach will allow borrowers to "avoid any period of repose by simply contriving a colorable notice issue that could give rise to the right to rescind."

Bank One Br. at 21.  "Financial institutions," according to the bank, "could be forced to defend a [ ] rescission claim long after the transaction is finished." *Id.* at 22 n.6.  But the same is already true if the borrower chooses *not* to refinance the loan.  Under those circumstances, all agree, the borrower has three years in which to rescind the transaction if (as alleged here) the bank failed to satisfy the notice requirements of the Act.   The statute itself in other words describes the rules for repose—three days if the bank satisfies its disclosure requirements and three years if it does not. *See Beach*, 523 U.S. at 419.  To the extent banks wish to avoid a three-year window for bringing rescission claims, the Act offers them a fail-safe way for doing so:  satisfy the disclosure requirements. *See, e.g.*, 15 U.S.C. § 1635(a); *id.* § 1635(f); 12 C.F.R. § 226.23(a)(3); *id.* § 226.23(b)(4); *see also Cox v. First Nat'l Bank of Cincinnati*, 751 F.2d 815, 818 (6th Cir. 1985) ("When there is a failure to make all material disclosures, the consumer has a continuing right of rescission.");  *Davis v. Fed. Deposit Ins. Corp.*, 620 F.2d 489, 492 *amended on rehearing* 636 F.2d 1115 (5th Cir. 1980) ("[T]he borrowers' right of rescission under § 1635(a) and (f) continues for more than three days after the extension of credit only if the lender has failed to make 'material disclosures required under this part' . . . , and continues, for up to three years, only so long as the lender fails to make such material disclosures.");  *Eby v. Reb Realty, Inc.*,  495 F.2d 646, 648 (9th Cir. 1974) ("When the creditor fails to disclose any item of the requisite information, the right to rescind is not limited by the normal three day period but continues until all the disclosures are made [or the right expires].").  Nor has the bank supplied us with any indication that the numerous district court decisions embracing this approach have prompted a flood of rescission claims premised on a "colorable notice issue."  Bank One Br. at 21.

        At the same time, in reaching this conclusion, we are by no means bringing this litigation to an end.  It remains to be seen whether the bank violated the Act's disclosure requirements, an issue that the district court did not reach in view of its refinancing analysis and an issue that it should consider in the first instance.  And in determining if the bank violated those requirements, it remains to be seen whether the bank failed to make the required *material* disclosures or failed to disclose adequately the Barretts' right to rescind, which are the types of disclosure errors that must be present to trigger the three-year right of rescission.  12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation.");  *see* 15 U.S.C. § 1635(f);  *see also* 15 U.S.C. § 1602(u) (defining material disclosures as disclosures of "the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required by section 1639(a) [of the Act]");  *id.* § 1635(h) (stating that a borrower "shall have no rescission rights arising solely from the form of written notice used by the creditor to inform" the borrower of the right to rescind, "if the creditor provided the [borrower] the appropriate form of written notice published and adopted by the Board, or a comparable written notice").

                                                    B.

        That leaves a few additional issues.  The Barretts also claim that the district court erred in declining to allow them to amend their pleadings to add claims under the Antitying Act, 12 U.S.C. § 1972.  In view of the need to remand the case to the district court, we think that it makes considerable sense to allow the Barretts to renew their motion and to give the district court an opportunity, should it still choose to deny the motion, to explain why it should not be granted. *See Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986); *see also Duggins v. Steak 'n Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999).

        Because the district court rejected the Barretts' claims under the Truth in Lending Act on the ground that their loans with Bank One had been refinanced, it had no opportunity (or reason) to address the parties' summary-judgment arguments regarding the adequacy of the bank's disclosures

under the Act.  As noted, it may now do so on remand.  As to the district court's decision to decline to exercise supplemental jurisdiction over the Barretts' state-law claims, that issue may be revisited by the district court now that the Truth in Lending Act claims are back before it.  *See Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996).

## III.

For these reasons, we reverse and remand for further proceedings consistent with this opinion.