# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 06-6071NE

_____

In re: Craig Edward Groat,                    *
                                              *
        Debtor.                               *
                                              *
Craig Edward Groat,                           *    Appeal from the United States
                                              *    Bankruptcy Court for the
        Debtor - Appellant,                   *    District of Nebraska
                                              *
              v.                              *
                                              *
Donald R. Carlson,                            *
                                              *
        Creditor - Appellee.                  *


_____

Submitted: May 11, 2007
Filed: May 24, 2007

_____

KRESSEL, Chief Judge, FEDERMAN and McDONALD, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

        Debtor Craig Edward Groat appeals from the Bankruptcy Court's[1] Judgment finding against him, and in favor of creditor Donald R. Carlson, in Groat's adversary

_____

        [1] The Honorable Timothy J. Mahoney, United States Bankruptcy Judge for the District of Nebraska.

action based on Carlson's alleged violations of the Truth in Lending Act ("TILA"). For the reasons that follow, we affirm.

## FACTUAL BACKGROUND

On September 5, 2002, Groat borrowed $22,500 from First Security Mortgage Company. At that time, he signed a promissory note in the original principal amount of $22,500, and granted First Security a deed of trust on his residence. First Security later assigned the promissory note and deed of trust to Donald R. Carlson. On April 15, 2004, Carlson made a second loan to Groat, in the amount of $24,000, evidenced by a promissory note and secured by another deed of trust on the residence. At some point thereafter, Groat defaulted on the payments under both loans.[2]

On July 8, 2005, after receiving the Lender's notice of default, Groat filed a *pro se* Chapter 13 bankruptcy petition. At the time he filed his petition, Groat owed the Lender approximately $27,000 on the first loan and approximately $25,000 on the second. Subsequently, by letter dated July 21, 2005, Groat notified the Lender and its attorney that, due to alleged defects in the loan documents, he was rescinding both loans under unspecified federal laws, regulations and case law.

The Lender moved for relief from the stay in the Bankruptcy Court, and Groat filed an adversary action against the Lender, seeking to rescind both loan transactions, cancel the debts under both loans, and set aside the Lender's deeds of trust under TILA. He also sought damages from the Lender. On February 21, 2006, the Bankruptcy Court denied the Lender's motion for relief from stay, pending resolution of the adversary action, because the issues appeared to be related. Both

---

[2] Hereafter, we will refer to First Security and Carlson collectively as the "Lender."

sides moved for summary judgment in the adversary action, and the Bankruptcy Court entered Judgment and a Memorandum finding in the Lender's favor. Groat appeals.[3]

## STANDARD OF REVIEW

Our review of the bankruptcy court's entry of summary judgment is *de novo*.[4] Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact in dispute so the moving party is entitled to judgment as a matter of law.[5]

## DISCUSSION

Congress enacted the Truth in Lending Act[6] to promote the informed use of credit by consumers by requiring meaningful disclosure of credit terms.[7] Congress

---

[3] Meanwhile, after the Bankruptcy Court entered judgment in the Lender's favor in the adversary action, the Lender filed a second motion for relief from stay, which the Bankruptcy Court granted because Groat failed to respond to it. The Lender has since conducted a foreclosure sale of the property.

[4] *A&L Laboratories, Inc. v. Bou-Matic LLC*, 429 F.3d 775, 778 (8th Cir. 2005).

[5] *Id.*; *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 770 (8th Cir. 2001); Fed. R. Civ. P. 56(c).

[6] Pub. L. No. 90-321, 82 Stat. 146 (codified as amended at 15 U.S.C. § 1601, *et seq.*).

[7] *Barrett v. JP Morgan Chase Bank, N.A.*, 445 F.3d 874, 875 (6th Cir. 2006) (*citation omitted*). *See also* 12 C.F.R. § 226.1(b) ("The purpose of this regulation is to promote the informed use of consumer credit by requiring disclosures about its terms and cost.").

has designated the Board of Governors of the Federal Reserve as the primary source for interpretation and application of the TILA, empowering it to formulate policy and to create rules for administering the statute.[8]  The Federal Reserve Board has issued an implementing regulation, commonly known as Regulation Z, which governs, among other things, the disclosures that lenders must make to consumers in various credit transactions.[9]

With certain exceptions not relevant here,[10] when a loan made in a consumer credit transaction is secured by the borrower's principal residence, TILA permits the borrower to rescind the loan agreement up to three business days after the transaction.[11]  When a lender fails to deliver certain forms or to accurately disclose

---

[8]  *Hess v. Citibank, (South Dakota), N.A.*, 459 F.3d 837, 842 (8th Cir. 2006) (*citing Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 238, 124 S.Ct. 1741, 158 L.Ed.2d 450 (2004)); 15 U.S.C. § 1604(a).

[9]  12 C.F.R. § 226.1 *et seq.*; *Santos-Rodriguez v. Doral Mtg. Corp.*, __ F.3d ___, 2007 WL 1153052 at *2 (1st Cir. April 19, 2007).

[10]  Generally, a residential mortgage transaction or the refinance of a residential mortgage transaction is not rescindable.   However, Regulation Z provides an exception which allows rescission of a refinance of a residential mortgage by a creditor other than the original creditor.  *See* Regulation Z § 226.23(f); Commentary to § 226.23(f).  No one disputes that TILA applies to Groat's transactions with the Lender.

[11]  *Barrett v. JP Morgan Chase Bank*, 445 F.3d at 877 (citations omitted); 15 U.S.C. § 1635(a) ("Except as otherwise provided in this section, in the case of any consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in

important terms to the borrower, TILA extends the borrower's right to rescind to three years.[12]

Groat asserts that the Bankruptcy Court improperly ignored TILA's three-year rescission period which, he says, applies to him. As discussed above, Groat is correct that TILA provides for a three-year period in which to rescind, *but only if* the lender fails to comply with one of the disclosure requirements. Therefore, since Groat's July 21, 2005 letter was tendered to the Lender well after the expiration of the three-day periods as to both loans, he must demonstrate that the Lender's disclosures or notices were defective, thereby triggering the three-year period.

Groat does not complain about the Lender's disclosures of the material loan terms as required under TILA. Rather, his dispute arises from the notices of his right to cancel, or rescind, the transaction. On that issue, TILA requires that the notice to the consumer "clearly and conspicuously" disclose the following:

(i) The retention or acquisition of a security interest in the consumer's principal dwelling.

(ii) The consumer's right to rescind the transaction.

(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(iv) The effects of rescission . . . .

(v) The date the rescission period expires.[13]

---

accordance with regulations of the Board, of his intention to do so. . . .").

[12] *Id.* (citation omitted); 1635(f); 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first.").

[13] 12 C.F.R. § 226.23(b)(1).

In order to satisfy the foregoing disclosure requirements, "the creditor shall provide the appropriate model form in Appendix H of this part or a substantially similar notice."[14]

Groat acknowledges that, at the time he entered into each loan transaction, he signed, dated, and received a copy of a Notice of Right to Cancel under TILA (the "Notices"). As the Bankruptcy Court noted, the substance of both Notices conform to the model notice found in Appendix H-8. However, Groat asserts that the Notices were defective in two respects. First, he asserts that the Lender was required to sign the Notices in its capacity as the lender, but did not do so. Second, the 2002 Notice contained a typographical error in the year in which the rescission had to be received by the Lender. Specifically, the Notice was given on September 5, 2002 (the date the loan was consummated), and three business days following September 5, 2002, was September 10, 2002. The Notice identified the deadline to be September 10, 2001 instead.[15]

---

[14] 12 C.F.R. § 226.23(b)(2); *see also* 15 U.S.C. § 1604(b) (a creditor shall be deemed to be in compliance with the disclosure provisions of TILA with respect to non-numerical disclosures if the creditor uses any appropriate model form as published by the Federal Reserve Board, or a modified model form if the modification does not affect the substance, clarity, or meaningful sequence of the disclosure).

[15] In a motion filed with the BAP on March 16, 2007 (entitled "Motion to Amend Pleading to Add Pleading"), Groat raises a new alleged defect in the Notices, *i.e.,* he now asserts that he recently discovered that he was supposed to received two copies of each Notice, and he thinks he may have only been given one copy of each Notice. TILA requires lenders to tender two copies of the notice, and failure to do so can invoke the three-year rescission period. 12 C.F.R. § 226.23(b)(1). However, Groat did not raise this issue before the Bankruptcy Court, and he cannot raise it for the first time on appeal. *First Bank Investors' Trust v. Tarkio College*, 129 F.3d 471, 477 (8th Cir. 1997) (holding that, particularly as to factual issues, an appellate court will generally not consider issues not presented to

6

Groat points us to no authority in support of his theory that lenders are required to sign these notices, and we found none. Indeed, requiring a lender to sign these notices would do nothing to further their purpose of ensuring that the borrower is informed of his rights.[16] As a result, Groat is simply incorrect in his assertion that the three-year rescission period was triggered by the Lender's failure to sign the Notices.

The Notice given with the 2002 loan, however, does contain a typographical error as to the date for the expiration of the three-day rescission period. Such an error might have been fatal prior to 1995, but after Congress amended TILA, "[m]ost courts have concluded that the TILA's clear and conspicuous standard is less demanding than a requirement of perfect notice."[17] "[T]he 1995 TILA amendments . . . were intended by Congress to provide higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure obligations."[18] As the Bankruptcy Court in this case pointed out, TILA now provides a safe harbor for creditors who commit unintentional notice violations:

> A creditor or assignee may not be held liable in any action brought under this section or section 1635 of this title for a violation of this subchapter if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programing,

the bankruptcy court in the first instance). Since the issue of whether Groat received two copies of the TILA Notices is a factual issue not raised before the Bankruptcy Court, we decline to consider it in this appeal.

[16] In fact, the forms complying with Rescission Model Form H-8 do not contain a line for the lender's signature.

[17] *Santos-Rodriguez*, 2007 WL 1153052 at *4 (citations omitted).

[18] *Id.* (citations omitted).

and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error.[19]

In order to receive this protection, a creditor must show that the error was a "bona fide error," and that the creditor maintains procedures "reasonably adapted to avoid such errors."

Here, the Lender's attorney involved in the 2002 loan transaction, Larry Ohs, submitted an affidavit in which he described his procedures regarding the consummation of loan transactions in his office. Ohs said that his assistant, who is trained in the preparation of such documents, prepares their loan documents. Ohs then proofreads the documents before the borrower signs them. In Groat's case, Ohs said he or his assistant reviewed each loan document with Groat before he signed them, specifically pointing to the date of the transaction so that Groat could verify that was the correct date of the transaction. Groat then signed the document. None of them noticed the incorrect year in the deadline date for rescission.

The Bankruptcy Court determined that the typographical error in this particular case was not the type of notice defect that constitutes a TILA violation, and we find no error in that determination. There was no evidence that the Lender or its attorney intended to deceive Groat. And, viewing the Lender's disclosure from the vantage point of the hypothetical average consumer,[20] we cannot say that the Bankruptcy Court erred in finding that the defect was not misleading because anyone reading the document would know that the cancellation deadline could not have passed a year before the document was even executed. It was, therefore, a bona fide error. Further, Ohs' procedures, with two people reviewing the documents prior to having the

---

[19] 15 U.S.C. § 1640(c).

[20] *Palmer v. Champion Mtg.*, 465 F.3d 24, 27 (1st Cir. 2006).

borrower sign them, and then explaining the form to the borrower, were reasonably adapted to avoid the error.

We recognize that TILA is a remedial statute and should be construed liberally in favor of the consumer. However, the 1995 amendments to TILA embodied Congress' desire to eliminate situations in which "small violations of the disclosure requirements of the Truth-in-Lending Act triggered the right of rescission provided by the Act."[21] As the Bankruptcy Court noted, cases which have denied creditors the protection of § 1640(c) have generally done so for errors more substantive than an obviously incorrect year, such as omitting the rescission expiration date altogether.[22] Because the error in the date here was obvious and not misleading, we agree with the Bankruptcy Court that it was an error of the type contemplated in § 1640(c)'s safe harbor.

We find, therefore, that the Lender's Notices sufficiently complied with TILA and Regulation Z. Nevertheless, Groat argues that, once he tendered his notice of rescission to the Lender, the rescission was, in effect, automatic. And, based on the automatic nature of the statute, upon his tender of the notice of rescission, it was then incumbent on the Lender to file a declaratory judgment action in order to challenge the rescission.

---

[21] 141 Cong. Rec. No. 153 S14567 (September 28, 1995). Truth in Lending Act Amendments of 1995, Pub. L. No. 104-29, 109 Stat. 271, 272-73.

[22] *See, e.g., Semar v. Platte Valley Federal Savings & Loan Assoc.*, 791 F.2d 699, 704 (9th Cir. 1986) (holding that an error in omitting the expiration date from the notice was a technical violation of TILA's notice requirements); *Reynolds v. D&N Bank*, 792 F.Supp. 1035, 1037-38 (E.D. Mich. 1992) (holding notice deficient in several respects, one of which was the omission of the expiration date).

Groat relies on § 1635 of TILA, § 226.23 of Regulation Z, and case law in support of this argument. Section 1635(b) and Regulation Z require that, when a borrower exercises his right to rescind, the security interest becomes void and, within twenty days after receipt of a notice of rescission, the creditor shall return to the borrower any money or property given as earnest money or deposit and take whatever action is necessary to show the security interest as void. Upon performance of the creditor's obligations, the borrower is required to tender the loan proceeds to the creditor. Groat asserts that, since the Lender neither voided the security interest and returned the money he had paid, nor filed a declaratory judgment action to challenge the rescission within twenty days after the July 21, 2005 letter, the Lender is effectively prohibited from presenting a defense here. In fact, he argues here that the Bankruptcy Court's findings concerning the alleged defects in the TILA Notices are irrelevant.

We disagree. First, although the statute provides for immediate voiding of the security interest and return of the money within twenty days of the notice of rescission, we believe this assumes that the notice of rescission was proper in the first place. As discussed above, since Groat was not entitled to the extended three-year rescission period, his notice of rescission was out of time and was, therefore, ineffective.

Second, assuming that the Lender was required to respond to the ineffective notice of rescission, the Lender says he attempted to promptly respond to Groat's July 21 letter, but was unable to reach Groat for several months. Based on a review of the Bankruptcy Court's docket, and Groat's own frequently expressed frustration with the fact that he is unable to receive mail, the Lender's statement that he was unable to immediately respond to Groat is entirely credible.

Third, if the Lender violated TILA for failing to promptly or properly respond to Groat's July 21 letter, the consequences for failing to respond to a notice of

rescission, found at § 1640 of TILA, include damages, but not the elimination of any defense whatsoever. And, contrary to Groat's assertion that the Lender was required to file a declaratory judgment action to avoid automatic rescission, according to at least one court, "[i]f a creditor does not respond to a rescission request within twenty days, *the debtor may file suit* in federal court to enforce the rescission right."[23]

Finally, although Groat cites cases which have held that rescission is automatic upon tender of the notice,[24] the Eighth Circuit has held to the contrary, expressly concluding that a court may condition rescission upon the borrower's prior return of the principal.[25] Therefore, as the Bankruptcy Court indicated, it could have conditioned the rescission on Groat's tender of the principal, and Groat did not offer any evidence that he was able to do so.

## CONCLUSION

For the reasons stated above, the Bankruptcy Court did not err in finding that the Lender's Notices of Groat's right to rescind the loan transactions complied with TILA and Regulation Z. Therefore, Groat's time in which to rescind those loans expired three days after each respective loan transaction. His attempts to rescind the loans after the expiration of those rescission periods were, therefore, ineffective. The Bankruptcy Court's Judgment is AFFIRMED. Groat's Motion to Amend Pleadings

---

[23] *Palmer v. Champion Mtg.*, 465 F.3d at 27 (emphasis added).

[24] *See, e.g., In re Quenzer*, 266 B.R. 760 (Bankr. D. Kan 2001), *rev'd Quenzer v. Advanta Mtg. Co. USA*, 288 B.R. 884 (D. Kan. 2003); *In re Williams*, 291 B.R. 636 (Bankr. E.D. Pa. 2003).

[25] *Federal Deposit Ins. Corp. v. Hughes Dev. Co.*, 938 F.2d 889, 890 (8th Cir. 1991), *cert. denied, Hughes Dev. Co. v. Great Plains Capital Corp.*, 502 U.S. 1099, 112 S.Ct. 1183, 117 L.Ed.2d 426 (1992).

to Add Pleading is DENIED because that issue was not raised in the Bankruptcy Court.   All other pending Motions in this case are DENIED.

_____