# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———

Nos. 07-6008EA
07-6013EA

———

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Michael Porter and Patricia Diane Porter, | * | |
| | * | |
| | * | |
| Debtors. | * | |
| | * | |
| Holly Sells, | * | |
| | * | Appeals from the United States |
| Plaintiff – Appellee/ | * | Bankruptcy Court for the Eastern |
| Cross-Appellant, | * | District of Arkansas |
| | * | |
| v. | * | |
| | * | |
| Michael Porter, | * | |
| | * | |
| Defendant – Appellant/ | * | |
| Cross-Appellee. | * | |

———

Submitted: August 15, 2007
Filed: September 21, 2007

———

Before KRESSEL, Chief Judge, FEDERMAN and MAHONEY, Bankruptcy Judges.

———

KRESSEL, Chief Judge.

Michael Porter appeals the bankruptcy court's[1] order which determined that a civil judgment debt against him on Holly Sells' claims for sexual harassment and retaliation was excepted from discharge. Sells also appeals the judgment entered in her favor. We affirm the bankruptcy court and dismiss Sells' appeal.

## Background

Porter and John Huffer were business partners and owners of Mr. Speedy Car Care Center. Sells was employed by Mr. Speedy. Huffer sexually harassed Sells while she worked for Mr. Speedy. Sells testified that Huffer repeatedly called her cell phone and left messages for her, asked her for sex, and grabbed various private areas of her body. Sells also testified that when she complained about the behavior to Porter, he told her that she should not flirt with Huffer.

On March 28, 2003, Sells and Huffer returned a customer's car from Mr. Speedy. Sells testified that while returning to Mr. Speedy, Huffer pulled into a parking lot and kept her in the car with the doors locked for 45 minutes. He returned to Mr. Speedy only after Porter called him. The next day, Porter gave Sells a memo addressed to both her and Huffer. It read:

> In light of recent rumors alleging some type of inappropriate contact between the two of you during business hours, I am looking for assistance in putting this matter to rest. Based on information provided by both of you in discussions with me, it appears that if anything did happen, any fault would have to be attributed to you both. It appears that there was a mutual understanding and agreement between the two of you that this was on a consensual basis.

---

[1]The Honorable Audrey R. Evans, Chief Judge, United States Bankruptcy Court for the Eastern and Western Districts of Arkansas.

I strongly suggest that in the future, both of you should be more cognizant of proper business etiquette, and refrain from any of these activities while at work. Your failure to adhere to this suggestion will prompt strong disciplinary action.

Your signatures on the bottom of this memo will serve as your acknowledgment and submission that anything that happened was of a consensual nature, and that nothing of this type will ever take place during normal work hours in the future. With you[sic] signatures, I will consider this matter closed, once and for all.

Huffer had already signed the memo. Sells made copies of the memo, but did not sign it. She testified that when Porter discovered that she had not signed the memo, he told her that if she did not sign it, she was fired. Sells did not sign the memo, nor did she return to work.

Sells brought claims for sexual harassment and retaliation under Title VII and the Arkansas Civil Rights Act against Mr. Speedy Car Care Center, Por John Enterprises LLC, Porter and Huffer. A jury trial was held September 7-9, 2005 in the United States District Court for the Western District of Arkansas.

The jury instructions required Sells to prove the following elements of sexual harassment in order for the jury to return a verdict in her favor: 1) Sells was subjected to sexual advances, sexually graphic and lewd comments, and inappropriate physical touching at the hands of John Huffer; 2) such conduct was unwelcome; 3) such conduct was based on Sells' sex and made her working conditions intolerable; 4) the defendants took adverse action against Sells with the intent of forcing her to quit or her resignation was a reasonably foreseeable result of the defendants' actions; and 5) Sells' rejection of or failure to submit to such conduct was a motivating factor in the defendants taking adverse action against her. The jury answered 'yes' to the

3

interrogatory that asked whether Sells had been sexually harassed by Huffer. The jury was not asked whether Sells had been sexually harassed by Porter.

On the claim of retaliation, the jury instructions described the essential elements as: 1) Sells complained to the defendants that she was being harassed on the basis of sex; 2) the defendants took adverse action against her; and 3) Sells' complaint of sexual harassment was a motivating factor in the defendants' actions. The jury answered the corresponding interrogatory with "[o]n plaintiff's claim that she was retaliated against because she complained about John Huffer sexually harassing her . . . we the jury find in favor of [the plaintiff]."

The interrogatory regarding punitive damages asked "do you find that defendants acted with malice or reckless indifference to plaintiff's right not to be sexually harassed and/or retaliated against?" The jury answered in the affirmative and awarded $150,000 in punitive damages. The jury also awarded $50,000 in compensatory damages for mental and emotional suffering and $60,000 for lost wages and benefits. The district court entered judgment for Sells in accordance with the jury verdict on September 28, 2006. It also awarded Sells attorney's fees and costs.

Porter filed a bankruptcy petition on December 16, 2005. Sells initiated this adversary proceeding against him on March 6, 2006, which alleges that her judgment for sexual harassment and retaliation is nondischargeable under 11 U.S.C. §523(a)(6) due to Porter's willful and malicious conduct. Sells filed a motion for summary

4

judgment on the basis of collateral estoppel on May 11, 2006, which the bankruptcy court granted on February 28, 2007. Porter appeals.[2]

## Standard of Review

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *Debold v. Case*, 452 F.3d 756, 761 (8th Cir. 2006); *In Re Vondall,* 364 B.R. 668, 670 (B.A.P. 8th Cir. 2007). The application of collateral estoppel is a question of law that is reviewed de novo. *Robinette v. Jones*, 476 F.3d 585, 588-589 (8th Cir. 2007). Our review of the bankruptcy court's entry of summary judgment is also de novo. *Groat v. Carlson (In re Groat)*, 2007 WL 1500050 (B.A.P. 8th Cir. 2007). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact in dispute so that the moving party is entitled to judgment as a matter of law. *Id.*

## DISCUSSION

## Collateral Estoppel

Because the prior judgment was in federal court under federal question jurisdiction, federal principles of collateral estoppel apply. *Murdock v. Ute Indian Tribe*, 975 F.2d 683, 687 (10th Cir. 1992). Collateral estoppel, or issue preclusion, generally refers to the effect a prior judgment has in foreclosing future litigation of an issue of fact or law that was litigated and resolved in a valid court determination and that is essential to the prior judgment, regardless of whether the issue arises on the same or a different claim. *New Hampshire v. Maine*, 532 U.S. 742, 748-49, 121 S.Ct.

---

[2]Huffer also filed bankruptcy. The bankruptcy court granted Sells summary judgment determining that Huffer's debt to her was excepted from discharge. Huffer has not appealed.

5

1808, 1814 (2001). In the Eighth Circuit, the five elements of federal collateral estoppel are: 1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; 2) the issue sought to be precluded must be the same as that involved in the prior action; 3) the issue must have been litigated in the prior action; 4) the issue must have been determined by a valid and final judgment; and 5) the determination must have been essential to the prior judgment. *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007). Porter really disputes only the second element, arguing that the issues in the district court case were not the same as the ones in this dischargeability proceeding.

11 U.S.C. § 523(a)(6) excepts from discharge any debt for a willful and malicious injury by the debtor. If the jury in Sells' sexual harassment case effectively determined that Porter's conduct was willful and malicious as part of finding him liable for retaliation, then the jury verdict would preclude the bankruptcy court from finding that Porter's actions were not willful and malicious. Although both parties ask us to review the evidence from the district court when reaching our decision, that is not part of our inquiry. We are not reviewing the propriety of that judgment. Rather we, like the bankruptcy court, must determine whether the jury verdict precluded the bankruptcy court from finding that Porter's actions were not willful and malicious. Thus, we turn to the jury's verdict and its answers to interrogatories.

## Porter's Actions Were Willful and Malicious.

While the parties argue extensively about whether the jury's award of punitive damages establishes willfulness and maliciousness, we think that the jury determination regarding the retaliation is sufficient to collaterally estop Porter.

6

42 U.S.C. § 2000e-3(a) prohibits employers from discriminating against an employee because the employee has opposed any practice that is unlawful under this subchapter, which includes sexual harassment, or because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. The jury determined that Porter violated this statute when he retaliated against Sells. 11 U.S.C. § 523(a)(6) states that "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–for willful and malicious injury by the debtor to another entity or to the property of another entity."

Under§ 523(a)(6), malice and willfulness are two different elements and the plaintiff must establish both in order to prevail. *Johnson v. Miera (In re Miera)*, 926 F.2d 741, 743 (8th Cir. 1991). "The word 'willful' in [§ 523(a)(6)] modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that 'leads to injury.'" *Kawaauhua v. Geiger*, 523 U.S. 57, 61 (1998). The willful injury standard is met if the injury was substantially certain to result from the debtor's conduct. *Geiger v. Kawaauhua (In re Geiger)*, 113 F.3d 848, 852-53 (8th Cir. 1997)(quoting Restatement(Second) of Torts § 8A, cmt. b, (1965)); *Jafarpour v. Shahrokhi (In re Shahrokhi)*, 266 B.R. 702, 708 (B.A.P. 8th Cir. 2001)(mentioning the 8th Circuit's reliance on the Restatement's substantially certain language and applying that standard). Malice must apply to a heightened level of culpability which goes beyond recklessness if it is to have a meaning independent of willful. *Johnson*, 926 F.2d at 743. "In the Eighth Circuit, an injury is malicious when the debtor intended to harm the creditor at least in the sense that the debtor's tortious conduct was certain or almost certain to case harm." *Osborne v. Stage (In re Stage)*, 321 B.R. 486, 493 (B.A.P. 8th Cir. 2005).

As we said in *Stage, supra*., it is the intent to cause both injury and harm (as those words are defined in the Restatement) that results in a willful and malicious

7

injury.  Thus, "if the debtor was aware of the plaintiff-creditor's right under law to be free of the invasive conduct of others (conduct of the sort redressed by the law on the underlying tort) and nonetheless proceeded to act to effect the invasion with particular reference to the plaintiff, wilfulness is established.  If in so doing the debtor intended to bring about a loss in fact that would be detrimental to the plaintiff, whether specific sort of loss the plaintiff actually suffered or not, malice is established.  Upon those showings, the debt that arises under law to compensate the plaintiff for that loss is nondischargeable."  *KYMN, Inc. v. Langeslag (In re Langeslag)*, 366 B.R. 51, 59 (Bankr. D. Minn. 2007).

Porter's retaliatory actions against Sells were willful.  The jury found that Sells reported that she was being sexually harassed by Huffer, and that he retaliated against her in response.  When Porter retaliated against Sells, he invaded her legally protected right to be free from discrimination after her report of sexual harassment.  Porter's discriminatory actions were willful because Porter took action against Sells because of her report of sexual harassment by Huffer.  His intent was to force Sells to give up her right to work in an environment free of harassment or give up her job.  These actions go beyond mere recklessness and become willful because Porter took purposeful action against Sells in order to force her to surrender her rights.

Porter's actions were also malicious because he intended to harm Sells when he retaliated against her.  One of the essential elements of retaliation requires that Porter take adverse action against Sells.  An 'adverse action' is an action that is certain or nearly certain to cause harm.  He intended that she suffer the harm of continuing to suffer the real emotional damage of continuing to work with Huffer or the harm of losing her income.  Sells did in fact suffer harm as a result of Porter's actions.  She suffered pecuniary damages in the form of lost wages and benefits, and also suffered mentally and emotionally.

8

Because Porter's actions were willful and malicious, Sells' judgment debt is excepted from Porter's discharge under 11 U.S.C. §523(a)(6).

## Sells May Not Appeal a Judgment in Her Favor

"A party may not appeal from a judgment or decree in his favor, for the purpose of obtaining a review of findings he deems erroneous which are not necessary to support the decree." *Electrical Fittings Corp. v. Thomas & Betts Co.* 307 U.S. 241, 242 (1939). Sells' cross-appeal alleges that the bankruptcy court erred in finding that Huffer's actions were not imputed to Porter by virtue of their partnership relationship. That the bankruptcy court ruled in favor of Sells on grounds other than she desired does not allow us to review the bankruptcy court's findings on the request of the prevailing party. *See California v. Rooney*, 483 U.S. 307, 311 (1987); *Elkin v. Metro Prop. & Cas. Ins. Co. (In re Shkolnikov)*, 470 F.3d 22, 24 (1st Cir. 2006). On appeal, Sells may assert alternative grounds for affirmance, and we may affirm the bankruptcy court's decision on any basis supported by the record. *See Power Equip. Co., LLC v. Case Credit Corp. (In re Power Equip. Co., LLC)*, 309 B.R. 552, 559 (B.A.P. 8th Cir. 2004). However, we are under no obligation to revisit conclusions of law that are unnecessary to support our decision. Since we are affirming the bankruptcy court on the grounds that plaintiff's debt is nondischargeable because Porter's conduct was willful and malicious, it is unnecessary for us to consider whether Huffer's conduct should be attributed to Porter.

## CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court is affirmed and Holly Sells' cross-appeal is dismissed.

9