In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1015

FRANCISCA RIVERA, individually and
on behalf of all others similarly
situated,

Plaintiff-Appellant,

v.

GROSSINGER AUTOPLEX, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 0442--Suzanne B. Conlon, Judge.

Argued September 28, 2001--Decided December 10, 2001

   Before Flaum, Chief Judge, Bauer and
Evans, Circuit Judges.

   Bauer, Circuit Judge.  The plaintiff-
appellant, Francisca Rivera, initiated a
class action against the defendant-
appellee, Grossinger Autoplex, Inc.,
seeking damages under the Truth in
Lending Act ("TILA") and Illinois
statutory law. After dismissing Rivera's
state law claims, the district court
granted summary judgment in favor of
Grossinger on the remaining TILA claims.
Rivera and the class members now appeal
that ruling. For the following reasons,
the decision of the district court is
AFFIRMED in part; REMANDED in part.

I.  Background

   On January 25, 1999, Rivera bought a
used 1995 Chevrolet Lumina automobile
from Grossinger. Pursuant to the contract
for sale entered into by Rivera and
Grossinger, the parties executed a
financing agreement, which included an
Addendum that provided for "GAP"
coverage. GAP (an acronym for "Guaranteed
Auto Protection") insurance is a form of
debt cancellation coverage. The practical
function of GAP coverage is to cancel any
loan deficiency that may remain if
property insurance on a given automobile

is insufficient to fully pay off the loan on that automobile in the event of theft or destruction.

The Addendum of the financing agreement providing for GAP coverage read in relevant part:/1

AGREEMENT--Although not required to do so, YOU have elected to participate in this Financial GAP Program . . . .

ENROLLMENT--YOU understand and agree that YOUR acceptance or rejection of enrollment in this Program is voluntary and is not a condition precedent to, or a consideration required to obtain credit . . . .

BY YOUR SIGNATURE(S) BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND AND ACCEPT THIS WAIVER, ALL ITS PROVISIONS, AND THAT NO VERBAL REPRESENTATIONS HAVE BEEN MADE TO YOU WHICH DIFFER FROM THESE PROVISIONS.

Rivera signed the Addendum at the time of purchase and paid $500 to enroll in the GAP program offered by Grossinger. Rivera's $500 payment was not included in the "finance charges" assessed for the car. Rather, the $500 GAP fee was included in the amount financed and was thereby subject to interest charges.

Rivera later sued Grossinger in federal court, alleging violations of TILA and Illinois statutory law. All of Rivera's causes of action arose from her purchase of GAP coverage. Rivera claimed that Grossinger did not comply with its legal obligations to clearly and conspicuously disclose in writing: (1) that GAP coverage was voluntary; (2) that GAP coverage was not a prerequisite to receiving credit; and (3) the term of GAP coverage./2 Rivera further claimed that Grossinger failed to obtain from her an affirmative written request for GAP coverage.

Following the dismissal of Rivera's state law claims, the district court certified a class of Grossinger customers to pursue the remaining TILA claims, with Rivera as the consumer class representative. After class notice was given, Rivera moved for and was denied summary judgment. Grossinger then filed its own motion for summary judgment,

which was granted on December 1, 2000. In granting that motion, the court found that Grossinger had complied with all applicable TILA requirements when it sold GAP coverage to Rivera.

## II. Discussion

We review the district court's grant of summary judgment de novo, viewing all facts and drawing all reasonable inferences in the non-moving party's favor. Spearman v. Ford Motor Co., 231 F.3d 1080, 1084 (7th Cir. 2000). Summary judgment is proper when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Berry v. Delta Airlines, Inc., 260 F.3d 803, 808 (7th Cir. 2001). Further, judgment as a matter of law should be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### A) TILA Requirements

TILA requires creditors to disclose any finance charges that a consumer will pay under a given credit transaction. 15 U.S.C. sec. 1638(a)(3). "Finance charges" can include debt cancellation fees, like those Grossinger charged customers who chose to enroll in its GAP program. 12 C.F.R. sec. 226.4(b)(10). However, debt cancellation fees may be excluded from finance charges if the following requirements are met:

(A) The debt cancellation agreement or coverage is not required by the creditor, and this fact is disclosed in writing;

(B) The fee or premium for the initial term of coverage is disclosed. If the term of coverage is less than the term of the credit transaction, the term of coverage shall also be disclosed . . .; and

(C) The consumer signs or initials an affirmative written request for coverage after receiving the disclosures specified in this paragraph.

12 C.F.R. sec. 226.4(d)(3)(i). Additionally, any disclosures made in compliance with these requirements must be clear and conspicuous as well as in writing. 12 C.F.R. sec. 226.17(a)(1).

   B)  Grossinger's Compliance With TILA Requirements

   Because Grossinger included the $500 fee Rivera paid for GAP coverage in the amount financed and excluded the same from the finance charges assessed, it must comply with the above-outlined requirements. Rivera argues that the Addendum she signed at the time of purchase did not meet these requirements. Specifically, Rivera asserts that Grossinger did not clearly and conspicuously disclose in writing: (1) that GAP coverage was voluntary; (2) that GAP coverage was not a prerequisite to receiving credit; and (3) the term of GAP coverage. In addition, Rivera asserts that Grossinger failed to obtain from her an affirmative written request for GAP coverage. We find each of these arguments to be without merit.

   The sufficiency of TILA-mandated disclosures is determined from the standpoint of the ordinary consumer. Smith v. Cash Store Management, Inc., 195 F.3d 325, 327-28 (7th Cir. 1999). Without question, the terms of the Addendum setting forth that GAP coverage is voluntary and not required to obtain credit meet this objective standard. Indeed, the first paragraph of the Addendum reads: "AGREEMENT--Although not required to do so, YOU have elected to participate in this Financial GAP Program." In a similar vein, the fourth paragraph goes on to state: "ENROLLMENT-- YOU understand and agree that YOUR acceptance or rejection of enrollment in this Program is voluntary and is not a condition precedent to, or a consideration required to obtain credit." Because the Addendum's plain language clearly discloses that enrollment in the GAP program is voluntary and not necessary to obtain credit, the question becomes whether such disclosure was also conspicuous as required.

   Conspicuousness is a question of law under TILA that, like clarity, is governed by an objective, reasonable

person approach. Smith v. Check-N-Go of Illinois, Inc., 200 F.3d 511, 514-15 (7th Cir. 1999). After reviewing the Addendum in its entirety, we are persuaded that a reasonable person could and would have readily perceived that acceptance of the GAP coverage offered by Grossinger was voluntary. The Addendum labels its provisions and uses capitalization to draw the reader's attention to material portions of the agreement, namely those disclosing that GAP coverage is voluntary and not a prerequisite to the obtainment of credit. We believe that the use of these tools effectively highlights the agreement's disclosure provisions for the reasonable consumer and is therefore sufficient to satisfy the conspicuous requirement of section 226.17.

   Although Rivera is correct in pointing out that the term of coverage disclosed in the Addendum that she signed is ambiguous, we agree with the district court that such ambiguity is insufficient to support a cause of action in this case. The evidence establishes that the term of GAP coverage purchased by Rivera was equal to the term of the underlying credit transaction (i.e., her car loan). Under these circumstances, TILA does not require a creditor to disclose the term of coverage at all, let alone clearly and conspicuously. Thus, Rivera's assertion that such ambiguity constitutes a TILA violation must fail.

   Equally unavailing is Rivera's claim that Grossinger did not obtain from her an affirmative written request for GAP coverage. It is undisputed that Rivera signed the Addendum providing for GAP coverage at the time of purchase. Further, as discussed in detail above, the Addendum complied with all applicable TILA requirements in clearly and conspicuously disclosing that GAP coverage was voluntary and not a condition precedent to the extension of credit. As such, Rivera's signature on and execution of the Addendum constitutes an affirmative written request for GAP coverage as a matter of law.

   Lastly, Rivera argues that the district court erred in entering summary judgment against her and the consumer class prior to the end of the class members' opt-out period. Specifically, Rivera asserts that it was error to bind one consumer class

member, Rocco Minghettino, to the judgment entered against the class because he wanted to opt out but was prevented from so doing after a binding judgment was entered prior to the expiration of the opt-out period. In light of these facts, we remand solely as to Mr. Minghettino, who may proceed to opt out of the December 1, 2000 order granting Grossinger summary judgment in the district court.

## III.  Conclusion

For the foregoing reasons, we find that Grossinger Autoplex, Inc. is entitled to summary judgment. Accordingly, we AFFIRM the decision of the district court in all respects except as to the claim of Mr. Minghettino, which is REMANDED as outlined above. AFFIRMED in part; REMANDED in part.

FOOTNOTES

/1 The Addendum signed by Rivera was one of three different GAP agreements used by Grossinger during the time period relevant to this case. There is no substantive difference among the material portions of these agreements.

/2 Rivera's claim that Grossinger did not clearly and conspicuously disclose the term of GAP coverage applies to her individually and is not representative of the consumer class.