In the

# United States Court of Appeals
### For the Seventh Circuit

————————

Nos. 04-3690 & 04-4042

VERNON HANDY, Administrator
of the Estate of Geneva H. Handy,

*Plaintiff-Appellant*,

*v.*

ANCHOR MORTGAGE CORPORATION
and COUNTRYWIDE HOME LOANS, INC.,

*Defendants-Appellees.*

————————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 1401—**Wayne R. Andersen**, *Judge.*

————————

ARGUED APRIL 6, 2006—DECIDED SEPTEMBER 29, 2006

————————

Before BAUER, WOOD, and SYKES, *Circuit Judges.*

WOOD, *Circuit Judge.* In 2000, Geneva Handy obtained a new mortgage on her home from Anchor Mortgage Corporation. As anyone who has taken out such a loan is doubtless aware, such a transaction requires a strong wrist and a good pen to sign a bevy of forms and documents. Many of these forms are required by the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, one of whose requirements is at issue in this case: that a creditor clearly disclose to a borrower her right to rescind the loan within three days and provide the borrower with an appropriate form to

accomplish the rescission. *Id.* at § 1635(a). If the creditor fails to do so, the period within which the borrower may rescind the loan is extended from three days to up to three years. *Id.* at § 1635(f); *Carmichael v. The Payment Center, Inc.*, 336 F.3d 636, 643 (7th Cir. 2003).

Two years after completing her transaction with Anchor, Handy sought to rescind the loan (which had by that time been assigned to Countrywide Home Loans, Inc.), based on Anchor's alleged violation of TILA's disclosure requirements. At the closing, it had given her two different rescission forms, one of which was inappropriate for her loan. The district court denied Handy's claim, explaining that although Anchor "obviously [ ] made a mistake" by giving Handy two different forms, both forms provided her with adequate notice of her right to rescind. We now reverse.

**I**

Prior to obtaining the loan from Anchor, Handy held a 30-year variable rate mortgage on her home that was serviced by a company known as Homecomings. In September 2000, Anchor extended Handy a 15-year fixed rate loan of $80,500, approximately $75,000 of which went toward paying off the prior mortgage.

On September 18, 2000, Handy attended the closing of the Anchor loan at a title company's office. On September 22, 2000, Handy returned to the title company's office to sign additional papers relating to the loan. Over the course of these two sessions, Handy was given five rescission forms. Four of these forms were identical. These forms, titled "NOTICE TO CANCEL—REFINANCE," stated:

YOUR RIGHT TO CANCEL:

You are entering into a new transaction to increase the amount of credit previously provided to you. Your

home is the security for this new transaction. You have a legal right under federal law to cancel this new transaction, without cost, within THREE BUSINESS DAYS. . . .

If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount.

In contrast, the fifth form, titled simply "NOTICE OF RIGHT TO CANCEL," stated:

YOUR RIGHT TO CANCEL:

You are entering into a transaction that will result in a mortgage, lien, or security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three (3) business days. . . .

If you cancel the transaction, the mortgage, lien, or security interest is also cancelled. . . .

Handy did not seek to rescind the Anchor loan within three days. Instead, two years later, in September 2002, she filed this complaint, charging that the notice provided to her by Anchor violated TILA. While the case was pending in the district court, Handy died. The court allowed Vernon Handy, Geneva Handy's son and the administrator of her estate, to substitute as plaintiff.

After a bench trial, the district court ruled in favor of Anchor, explaining that "had Mrs. Handy wanted to rescind and looked at her closing documents and found either of these forms, either one of them would have led her to rescind[ ]." Vernon Handy now appeals.

## II

Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to

compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). As is relevant to this case, TILA mandates for borrowers involved in "any consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended" a three-day period in which the borrower may rescind the loan transaction and recover "any finance or other charge," earnest money, or down payment previously made to the creditor. See 15 U.S.C. § 1635(a), (b). In the context of "[a] refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling," the right of rescission applies only "to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation." 12 C.F.R. § 226.23(f)(2). That is, if a second loan from the same creditor exceeds the amount of the first loan, the borrower has the right to rescind only the difference between the two loans.

In addition to creating the right of rescission, TILA requires creditors "clearly and conspicuously" to disclose to borrowers their right to rescind and the length of the rescission period, as well as to provide borrowers with "appropriate forms . . . to exercise [their] right to rescind [a] transaction." 15 U.S.C. § 1635(a). The Federal Reserve Board (FRB), one of the agencies charged with implementing TILA, has promulgated an implementing regulation, known as Regulation Z, 12 C.F.R. § 226 *et seq.*, that, among other things, requires creditors to disclose the following elements to borrowers:

> (i) The retention or acquisition of a security interest in the consumer's principal dwelling.

(ii) The consumer's right to rescind the transaction.

(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(iv) The effects of rescission. . . .

(v) The date the rescission period expires.

12 C.F.R. § 226.23(b)(1). In order to help creditors comply with TILA, the FRB has created model forms containing the required disclosures. Pursuant to Regulation Z, creditors are required either to provide borrowers with an "appropriate model form" or, in the alternative, to give them "a substantially similar notice." 12 C.F.R. § 226.23(b)(2). If a creditor fails to provide a proper form, the borrower is free to rescind the loan at any time up to three years from the date of the original transaction. 15 U.S.C. § 1635(f). Failure to provide the proper form also subjects a creditor to statutory damages. 15 U.S.C. § 1640(a).

The two FRB forms relevant to this case are Rescission Model Form H-8 (General), intended to be used in situations like Anchor's loan to Handy, where the new creditor is a different party from the original lender, and Rescission Model Form H-9 (Refinancing with Original Creditor), designed specifically for the situation outlined in § 226.23(f)(2), where the original creditor extends a second, larger loan to the borrower. The two forms provided to Handy by Anchor were materially indistinguishable from the FRB's model forms. Anchor provided Handy with four copies of a version of Form H-9 and one copy of Form H-8.

Handy's primary contention is that by providing her with both the H-8 and H-9 forms Anchor failed to disclose her right to rescind the loan clearly and conspicuously, as required by TILA. She argues that, read in the context of the Anchor loan, the Form H-9's statement that "[i]f you

cancel this new transaction, it will not affect any amount that you presently owe" incorrectly suggests that she "only had the right to rescind $5,500, the approximate difference between the Anchor loan and the balance she owed on the Homecomings loan," when in fact she had the right to rescind the entire $80,500 Anchor loan.

Anchor does not deny that it provided Handy with H-9 forms, nor that Form H-8 alone would have been appropriate for this transaction. Instead, Anchor contends that both Form H-8 and Form H-9 independently provided Handy with legally adequate notice of her right to rescind. That is, even if Form H-9 was not the "appropriate form," it was "substantially similar" enough to Form H-8 to meet TILA's disclosure requirements. It points out that there is no evidence in the record that Geneva Handy was confused by either form. With regard to the two forms' different statements about the "effects of rescission," Anchor contends that Form H-9's statement is "true regardless of whether the lender is new or old when the borrower is obtaining a loan greater than the earlier loan." Anchor reasons as follows: "There is a new transaction. It does increase the amount of money previously provided. The home is collateral. And cancelling the new loan does not change the fact that the home will still be collateral for the earlier loan." Finally, Anchor argues that even if it did technically violate TILA, it should be excused from liability based on the law's safe harbor provision for unintentional errors.

"The sufficiency of TILA-mandated disclosures is determined from the standpoint of the ordinary consumer." *Rivera v. Grossinger Autoplex, Inc.*, 274 F.3d 1118, 1121-22 (7th Cir. 2001) (citing *Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 327-28 (7th Cir. 1999)). As a result, Anchor's argument that "[t]he most illuminating fact demonstrating the clarity of Anchor's Notice is that the Plaintiff simply was not confused" misses the point. Whether a particular disclosure is clear for purposes of TILA is a question of law

that "depends on the contents of the form, not on how it affects any particular reader." *Smith v. Check-N-Go of Ill., Inc.*, 200 F.3d 511, 515 (7th Cir. 1999).

Although we are sympathetic to the district court's common-sense observation that "had Mrs. Handy wanted to rescind and looked at her closing documents and found either of [the H-8 or H-9] forms, either one of them would have led her to rescind[ ]," we nevertheless conclude that Anchor's simultaneous provision of both a Form H-8 and a Form H-9 did not meet TILA's clear and conspicuous disclosure requirement, especially with regard to the "effects of rescission." TILA does not easily forgive "technical" errors. See *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995) (stating that "hypertechnicality reigns" in TILA cases). Even if Anchor is correct that a close parsing of Form H-9's "effects of rescission" statement might make it possible to reconcile it with the type of loan extended to Handy, the notice provided remains insufficient for Anchor to prevail. Where more than one reading of a rescission form is "plausible," the form does not provide the borrower "with a clear notice of what her right to rescind entail[s].*"Porter v. Mid-Penn Consumer Disc. Co.*, 961 F.2d 1066, 1077 (3d Cir. 1992).

Nor are we persuaded by Anchor's argument that TILA's safe harbor provision protects it, an argument Anchor raised below but the district court did not reach. This provision requires a creditor to "show[ ] by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1640(c). As far as we can tell, there is no evidence in the record that Anchor maintains any such procedures. Although Anchor's general counsel, who was called as a witness by the company, was asked twice what procedures the company had in place to prevent the type of mix-up that occurred in Handy's case, she was unable to

describe any system used to ensure that the correct rescission forms are provided to borrowers.

Since we hold that the forms Anchor provided to Handy violated TILA's requirement of a clear and conspicuous disclosure of the effects of rescission, we need not reach Handy's additional argument that the absence of the rescission period expiration date on several of the forms provided another reason to hold Anchor liable.

## III

Having established that Anchor violated TILA, we turn now to the issue of remedies. Under TILA's civil liability provisions, a creditor that violates 15 U.S.C. § 1635 is liable for: "actual damage[s] sustained" by the debtor, 15 U.S.C. § 1640(a)(1); "not less than $200 or greater than $2,000" in statutory damages, § 1640(a)(2)(A)(iii); and "the costs of the action, together with a reasonable attorney's fee," § 1640(a)(3). In addition, § 1635(b) itself provides that when a debtor rescinds she is "not liable for any finance or other charge"; "any security interest . . . becomes void"; and "[w]ithin 20 days after receipt of a notice of rescission," the creditor must "return to the [borrower] any money or property given as earnest money, downpayment, or otherwise."

Anchor contends that rescission is an inappropriate—maybe even an impossible—remedy in this case because Handy's estate has recently paid off the subject loan. Handy responds that rescission remains proper because, although Anchor's security interest is no longer at issue, "money and property can just as easily be returned to the borrower after the loan has been paid off as before." An opposite rule, Handy argues, would encourage creditors "to delay for as long as possible" the resolution of a borrower's rescission request in the hope that the borrower will pay off the

subject loan and relieve the creditor of at least some of its liability under TILA.

In a recent opinion addressing this issue, the Sixth Circuit held that "rescinding a loan transaction requires unwinding the transaction in its entirety and thus requires returning the borrowers to the position they occupied prior to the loan agreement." *Barrett v. JP Morgan Chase Bank, N.A.*, 445 F.3d 874, 877 (6th Cir. 2006). The court noted that "the statute and regulations refer to a 'right to rescind the *transaction*,' not just a right to rescind the security interest." *Id.* at 878 (quoting 15 U.S.C. § 1635(a) (emphasis added)). Although TILA's Regulation Z identifies two specific events that extinguish a borrower's right to rescind—such as the "transfer of all of the consumer's interest in the property" or the "sale of the property," 12 C.F.R. § 226.23(a)(3)—"[n]owhere do[es] the legislation or regulations add that the act of refinancing an existing loan transaction by itself cuts off the right of rescission." *Barrett*, 445 F.3d at 878. Finally, the court observed that "[t]he preservation of the right [of rescission] prevents a refinancing, even a refinancing prompted by the inadequately disclosed terms of an earlier loan or by the refusal of the bank to rescind the earlier loan, from insulating lenders from responsibility for their noncompliance [with TILA]." *Id.* at 879.

The Sixth Circuit recognized that its opinion created some tension with the Ninth Circuit's decision in *King v. State of Cal.*, 784 F.2d 910 (9th Cir. 1986), in which that court stated, in very cursory fashion, that a loan "cannot be rescinded . . . [if] there is nothing to rescind." *Id.* at 913. As the Sixth Circuit explained, however, the Ninth Circuit's two-sentence discussion of the remedy issue is unpersuasive because "it does not address the provisions of the Truth in Lending Act that undermine its conclusion." *Barrett*, 445 F.3d at 880.

We agree with the Sixth Circuit's well-reasoned opinion in *Barrett* and hold that the remedies associated with rescission remain available even after the subject loan has been paid off and, more generally, that the right to rescission "encompasses a right to return to the *status quo* that existed before the loan." *Id.* Because Homecomings was paid off long ago and released its security interest, rescission would have no effect on it. To rescind, Handy would have to give back to Anchor everything she received on September 18, 2000 (that she has not already given to it, if anything), and Anchor would release whatever security interest it might have asserted. Given the statute, Anchor forfeits its right to collect interest, and so it must reimburse Handy for any interest paid while the loan was outstanding. In addition, there are statutory damages and attorneys' fees. We leave to the district court on remand the task of determining precisely what remedy is appropriate, within these general outlines.

## IV

The district court's judgment is REVERSED and this matter is REMANDED to the district court for further proceedings consistent with this opinion.

A true Copy:

       Teste:

                         _____

                         *Clerk of the United States Court of*
                         *Appeals for the Seventh Circuit*