Affirmed by published opinion. Judge NIEMEYER wrote the majority opinion, in which Judge DIAZ joined. Judge WYNN wrote a dissenting opinion.
OPINION
NIEMEYER, Circuit Judge:
The issue presented is whether a lender violates the Truth in Lending Act, 15 U.S.C. § 1601 et seq. (“TILA”), in providing notice to a borrower who is refinancing his mortgage of the right to rescind the transaction, using a form of notice substantially similar to Model Form H-8 in the Appendix to Regulation Z, 12 C.F.R. pt. 226, rather than using Model Form H-9, which was designed for refinancing transactions.
The district court dismissed the borrower’s complaint for failure to state a claim upon which relief could be granted, concluding that although Model Form H-8 is somewhat different from Model Form H-9, the use of Model Form H-8 in a refinancing transaction did not amount to a TILA violation.
We agree. Model Form H-8 includes all of the information required by TILA and Regulation Z to advise borrowers of the right to rescind a consumer credit transaction, including a refinancing transaction, and accordingly we affirm.
I
Edward Watkins and Danielle Watkins refinanced the loan on their house in Richmond, Virginia, with a new loan from Sun-Trust Mortgage, Inc., secured by a deed of trust on their house. SunTrust had also been the lender on the Watkinses’ prior loan. At the closing of the refinancing transaction on May 7, 2007, SunTrust gave the Watkinses written notices of their right to rescind the transaction, using a form of notice that was substantially similar to Form H-8 (“Rescission Model Form (General)”), as included in the Appendix to Regulation Z, 12 C.F.R. pt. 226. Model Form H-8 contained all of the information specified in TILA and Regulation Z for disclosure of the right to rescind a secured consumer credit transaction, but it did not include some language specific to refinanc *234 ing transactions, which is included in Model Form H-9.
Some 18 months after closing, when the Watkinses had fallen behind in payments on their loan, SunTrust scheduled a foreclosure sale of the house for the end of December 2009. By letter dated December 14, 2009, the attorney for Edward Watkins, who was then separated from his wife, announced that Watkins was rescinding the May 7, 2007 refinancing transaction because SunTrust had “provided the Watkinses notices of right to cancel applicable to a new extension of credit by a new creditor, whereas this was an extension of additional credit by an existing creditor with an existing lien on the home.” The letter explained:
Attached to this letter is a copy of Exhibit H-9 to Regulation Z (promulgated by the Federal Reserve Board) which provides the proper notice of right to cancel in a credit transaction involving a new extension of credit by an existing creditor.... The notice of right to cancel you provided to the Watkinses ... did not set forth proper language such as set forth in Exhibit H-9 to Regulation Z for new extensions of credit by existing creditors.... Rather, the notice you provided to the Watkinses was based on Exhibit H-8 to Regulation Z, for credit transactions by an entirely new creditor.
The letter claimed that SunTrust’s use of Form H-8 in lieu of Form H-9 was “a material violation of TILA disclosure requirement[s].”
When SunTrust failed to take steps to rescind the transaction, Edward Watkins commenced this action under TILA, seeking a declaratory judgment that he was entitled to rescind the May 7, 2007 refinancing transaction and an award of statutory damages in the amount of $2,000.
SunTrust filed a motion to dismiss Watkins’ complaint under Federal Rule of Civil Procedure 12(b)(6), asserting that the disclosures that SunTrust provided to the Watkinses fully complied with the requirements of TILA and Regulation Z, albeit through Model Form H-8 rather than Model Form H-9. SunTrust claimed that Model Form H-8 provided the Watkinses with all of the information required by TILA to inform them of the right to rescind. SunTrust suggested that Watkins’ attempt to rescind after facing foreclosure was “plainly nothing more than a transparent, and legally improper, attempt to avoid foreclosure.”
The district court granted SunTrust’s motion, explaining:
While it would seem obvious that a lender would be well advised to use a Model Form H-8 in a new extension of credit and Model Form H-9 when refinancing an existing mortgage, the Court cannot conclude that a lender’s use of one form in place of another, without more, is in and of itself a violation of the TILA. Since Watkins has not alleged that the disclosures made at the time of the refinancing were otherwise deficient, the Court must conclude that he has failed to show his entitlement in either law or fact, to the relief he seeks.
From the district court’s order dismissing the case, dated July 15, 2010, Watkins filed this appeal.
II
To facilitate the “informed use of credit,” the Truth in Lending Act requires lenders “clearly and conspicuously” to make a number of disclosures to borrowers, including the disclosure of the borrowers’ right to rescind a consumer credit transaction. 15 U.S.C. §§ 1601(a), 1635(a). TILA provides that a borrower has the right to rescind a consumer credit transac *235 tion in which the borrower gives the lender a security interest in the borrower’s principal dwelling. The right to rescind extends “until midnight of the third business day” after the closing of the transaction or after delivery of TILA-required disclosure forms, id. § 1635(a), but if the required disclosures are not delivered to the borrower, the borrower’s right to rescind expires three years after closing, id. § 1635(f).
TILA requires the Federal Reserve Board to promulgate regulations to carry out the purposes of the Act, including “model disclosure forms” to “facilitate compliance with the disclosure requirements.” 15 U.S.C. § 1604(b). But TILA also provides that “[njothing in this sub-chapter may be construed to require a creditor [in giving notice of the right to rescind] to use any such model form or clause prescribed by the Board under this section.” Id.
As directed, the Board promulgated Regulation Z, 12 C.F.R. pt. 226, in which it itemized the notice requirements for disclosing the right of rescission. Regulation Z provides that the notice of the right to rescind must “conspicuously disclose” the following elements:
(i) The retention or acquisition of a security interest in the consumer’s principal dwelling.
(ii) The consumer’s right to rescind the transaction.
(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor’s place of business.
(iv) The effects of rescission, as described in paragraph (d) of this section.
(v) The date the rescission period expires.
12 C.F.R. § 226.23(b)(1); see also 15 U.S.C. § 1635(a), (b). The “effects of rescission,” as described in clause (d) of § 226.23, are that rescission (1) voids the transaction, including the security interest created by it; (2) entitles the borrower to a refund of all amounts, including finance charges, paid in connection with the transaction; and (3) requires the borrower, after the lender has carried out its obligations in rescission, to refund any money or property that the borrower received as a result of the transaction. See 12 C.F.R. § 226.23(d). In Appendix H to Regulation Z, the Board provides two model forms for rescinding “closed-end transactions”— Model Form H-8 (“Rescission Model Form (General)”) and Model Form H-9 (“Rescission Model Form (Refinancing with Original Creditor)”).[1]
Model Form H-8, which is the “general” model form for rescinding closed-end secured consumer credit transactions, provides as follows:
NOTICE OF RIGHT TO CANCEL
Your right to cancel
You are entering into a transaction that will result in a [mortgage/lien/security interest] [on/in] your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:
(1) the date of the transaction, which is _; or
*236 (2) the date you received your Truth in Lending disclosures; or
(3) the date you received this notice of your right to cancel.
If you cancel the transaction, the [mortgage/lien/security interest] is also can-celled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the [mortgage/lien/security interest] [on/in] your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.
You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.
How to Cancel
If you decide to cancel this transaction, you may do so by notifying us in writing, at (creditor’s name and business address).
You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.
If you cancel by mail or telegram, you must send the notice no later than midnight of (date) (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL
Consumer’s Signature Date
This form contains all of the information required by TILA and Regulation Z to disclose the right to rescind a secured consumer credit transaction. See 15 U.S.C. § 1635(a), (b); 12 C.F.R. § 226.23(a), (b), (d).
Model Form H-9, designated for rescinding a transaction “Refinancing with Original Creditor,” provides essentially the same information as does Model Form H-8, but it also includes two additional sentences to reflect that the transaction is a refinancing. First, instead of Form H-8’s disclosure that the borrower is “entering into a transaction that will result in a security interest in your home,” Form H-9 provides that “[y]ou are entering into a new transaction to increase the amount of credit previously provided to you.” Second, Form H-9 adds a sentence, “If you cancel this new transaction, it will not affect any amount that you presently owe.”
It is undisputed that the Watkinses’ May 7, 2007 loan transaction was a refinancing involving the same creditor that extended credit to the Watkinses on their prior loan. It is also undisputed that at the closing of the transaction, SunTrust provided the Watkinses with a disclosure of their right to rescind that was substantially similar to Model Form H-8 and that did not include the two additional sentences included in Model Form H-9.
Watkins contends that SunTrust’s use of Form H-8 to disclose the right of rescission gave him inadequate notice of his right of rescission. He argues essentially that the notice of right to rescind a refi *237 nancing transaction must contain some advice to the borrower that a rescission will only affect the new amount financed, and must also disclose that if the borrower rescinds, the borrower’s obligations will revert to the preexisting loan. As he states:
There are substantial differences between the notice of right to cancel for a loan from a new lender and the notice of right to cancel for extension of new credit by an existing creditor. If the loan is an extension of new credit by an existing creditor, as here, the debtor must be told that if the debtor rescinds, the debtor can go back to the pre-existing loan. The notice of right to cancel which Sun Trust gave to Watkins and his wife told them that if they rescinded, the entire transaction was canceled. It did not tell them, and therefore did not tell Watkins, that he could rely on his right to return to the pre-existing loan.
To support his argument that Form H-9 must be used, Watkins relies heavily on the Seventh Circuit’s decision in Handy v. Anchor Mortgage Corp., 464 F.3d 760 (7th Cir.2006), where the court held that a lender, which had given the borrower both the H-8 and H-9 Model Forms of notice, violated TILA’s disclosure requirements. Reiterating its prior determination that “hypertechnicality reigns in TILA cases,” the court reasoned, “[wjhere more than one reading of a rescission form is ‘plausible,’ the form does not provide the borrower with a clear notice of what her right to rescind entail[sj.” Id. at 764 (internal quotation marks omitted). Watkins urges that we apply a similarly strict standard in evaluating SunTrust’s compliance with TILA and Regulation Z, including the model forms included in the Appendix to Regulation Z.
SunTrust acknowledges that Model Form H-9 contains “some language regarding the effect of rescission on the pri- or indebtedness,” which it did not include in the disclosure that it provided to the Watkinses. But it contends that the additional language is language that “neither Congress nor the Federal Reserve Board deemed mandatory, as no requirement for it is provided either in TILA or Regulation Z.” SunTrust argues that even Watkins’ complaint “effectively” acknowledges that “he had received in the notice provided to him by [SunTrust] all of the information which TILA requires of a lender under the circumstances described.” In addition, Sun-Trust argues that “TILA was not intended to be used as a hypertechnical loophole for borrowers to escape their contractual obligations.” Notice of the right to rescind, it argues, need not be “perfect,” so long as it substantially complies with the requirements of TILA and Regulation Z.[2]
We begin our analysis with a review of the statutory and regulatory language relating to the right of rescission and disclosure of the right.
TILA gives the borrower the right to rescind “any consumer credit transaction” in which the credit is secured by a lien on the borrower’s home. 15 U.S.C. § 1635(a). And when “any consumer transaction” is so rescinded, TILA provides that (1) the borrower is relieved of any obligation to *238 pay a “finance or other charge”; (2) the security interest created by the transaction becomes void; and (3) upon the lender’s performance in returning money paid by the borrower and in voiding the security interest, the borrower must return to the lender any money paid to the borrower. Id. § 1635(b). Finally, TILA requires that the creditor “clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the [rescission] rights of the obligor under this section.” Id. § 1635(a). The statute does not make any distinction between a consumer credit transaction that provides initial financing and a consumer credit transaction that refinances an existing loan. The right to rescind is made applicable to “any consumer credit transaction” and the effects of rescission are the same with respect to any form of such a transaction.
Regulation Z likewise makes no such distinction. It mandates that the notice of rescission include “[t]he effects of rescission as described in paragraph (d) of this section,” 12 C.F.R. § 226.23(b)(l)(iv), and paragraph (d) simply parrots the statutory language, as described above. Consistent with the common understanding of rescission, the creditor must give back all fees received from the borrower and undo the security interest given with respect to the loan, and the borrower in turn must return the money it received. The parties are thus returned to the status quo ante.
Watkins’ suggestion that the failure slavishly to follow the language of Form H-9 in giving notice of the right of rescission is a violation of TILA cannot be supported by the language of TILA or of Regulation Z. While TILA does indeed require the Federal Reserve Board to publish model disclosure forms “to facilitate compliance with the disclosure requirements,” 15 U.S.C. § 1604(b) (emphasis added), it just as quickly provides that the lender need not use any such model form, so long as the required information is provided, id. Indeed, the statute goes further, providing that the lender “shall be deemed to be in compliance with the disclosure provisions” even if it modifies the Board’s form by “deleting any information which is not required by this subchapter.” Id. (emphasis added). Consistent with these statutory provisions, the regulations require the use of a Board-drafted form “or a substantially similar notice.” 12 C.F.R. § 226.23(b)(2) (emphasis added).[3]
Accordingly, SunTrust was not required to include in any notice the information contained in the two additional sentences included in Form H-9 for refinancing. Indeed, the two additional sentences are nothing more than a particularized restatement of what is contained in Form H-8, which is that the right to rescind applies to the entire consumer credit transaction. Just as an initial financing transaction may be rescinded, so may a refinancing be rescinded, and, as with any rescission, the effect of rescission is to return the parties to the same position they were in before the rescinded transaction was consummated.
Thus, because SunTrust’s notice to the Watkinses fulfilled each requirement imposed by TILA and by Regulation Z— indeed, nearly verbatim — it is an unsustainable argument to maintain that its no *239 tice was in violation of TILA. See Santos-Rodriguez v. Doral Mortg. Corp., 485 F.3d 12, 18 (1st Cir.2007) (Model Form H-8 is sufficient for refinancing transactions); Mills v. EquiCredit Corp., 172 Fed.Appx. 652, 656-57 (6th Cir.2006) (same); Veale v. Citibank, 85 F.3d 577, 580 (11th Cir.1996) (same).
Watkins argues that SunTrust’s notice of the right of rescission incorrectly told the Watkinses that if they rescinded, “the entire transaction was canceled. It ... did not tell Watkins that he could rely on his right to return to the pre-existing loan.” The second sentence of this argument, however, does not follow from the first. As Watkins acknowledges, the notice advised the Watkinses of the right to rescind the entire transaction, which was a correct statement and was required by law. When an entire transaction is rescinded, however, the status quo before the transaction must be restored, including, in this case, the reinstatement of the prior loan.
By definition, a refinancing is the taking out of a new loan to repay an existing loan, hence refinancing. The new loan can be taken out to replace the prior loan with one having a lower interest rate or one having a fixed rate as opposed to a variable rate. The refinancing can replace a longer term loan with a shorter term loan or a balloon-payment loan. And, of course, a refinancing can provide “cash out,” which would increase the loan amount under the refinancing. But in any of these refinancing transactions, the preexisting financing arrangement is extinguished and replaced by the new financing.
Thus, when any such refinancing transaction is rescinded, the entire new loan transaction, including the security agreement, is voided, and the parties are returned to the status quo ante. But none of these details relating to particular terms of a refinancing and to the particularized effects of rescinding those terms need be disclosed under TILA or Regulation Z. The reversal of the terms of any particular form of refinancing flows from the more generalized right of a borrower to rescind the “entire transaction,” as understood by Watkins. Thus when Watkins was told that he could rescind the entire refinancing transaction, he was told that all the aspects of the new transaction would be undone, and because the new transaction extinguished the prior financing, to rescind would require that his situation before the transaction be restored.
Even if we were to understand that the additional language contained in H-9 was somehow required by TILA, we would nonetheless find no violation here because the additional information included in Model Form H-9'was substantially included in the notice provided for in Model Form H-8. Model Forms H-8 and H-9 both describe in similar language the effects of rescission, using the language contained in TILA and Regulation Z. Form H-9, however, spells out further that rescission of a refinancing will essentially return the borrower to his pretransaction status such that the rescission “will not affect any amount that you presently owe.” While rescission, by definition, includes restoration of the parties to their prior positions, this additional language in Form H-9 simply emphasizes that the previous loan and security interest in the property will be reinstated. We cannot conclude that the omission of this elaboration about the effects of a rescission results in a violation of TILA, which allows for substantial compliance with the rescission notice requirements. As we have held, TILA’s regulations should be “reasonably construed and equitably applied.” Am. Mortg. Network, Inc. v. Shelton, 486 F.3d *240 815, 819 n. 4 (4th Cir.2007). And this view is the interpretative approach adopted by most of the circuits. See Santos-Rodriguez, 485 F.3d at 16 (“Most courts have concluded that the TILA’s clear and conspicuous standard is less demanding than a requirement of perfect notice”); Veale, 85 F.3d at 581 (“TILA does not require perfect notice; rather it requires a clear and conspicuous notice of rescission rights”); Gambardella v. G. Fox & Co., 716 F.2d 104, 118 (2d Cir.1983) (“TILA ... does not require perfect disclosure”); Smith v. Chapman, 614 F.2d 968, 972 (5th Cir.1980) (“Strict compliance does not necessarily mean punctilious compliance if, with minor deviations from the language described in the Act, there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation”); cf. Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 568, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980) (“Meaningful disclosure [under TILA] does not mean more disclosure. Rather, it describes a balance between competing considerations of complete disclosure and the need to avoid information overload”) (internal quotation marks and alterations omitted).
At bottom, we conclude that nothing in TILA requires a lender specifically to advise the borrower of the specific “effects” of rescinding a mortgage refinancing, as distinct from rescinding an initial mortgage financing. Because SunTrust’s notice to the Watkinses, given in their refinancing transaction, included all of the “effects of rescission” that are mandated by TILA and Regulation Z, we conclude that the disclosure that SunTrust gave through use of Model Form H-8 satisfied the requirements of TILA and Regulation Z, even though the notice did not contain the additional language contained in Model Form H-9. Accordingly, we affirm the judgment of the district court.

AFFIRMED

. The dissenting opinion seems to assume that use of Model Form H-8 is "the appropriate model form in Appendix H promulgated by the Federal Reserve Board for new borrowers.” Post at 243 (emphasis added); see also post at 243. But nothing supports that assertion. Form H-8 is the "general” form included for rescinding closed-end secured consumer credit transactions. See App' FI to Reg. Z, 12 C.F.R. pt. 226. We cannot conclude that a “general” form must be limited in use to transactions with "new borrowers.”

. The dissent assumes as "undisputed” that SunTrust “did not use the appropriate model form to provide notice to the Watkinses.” Post at 243; see also post at 243. It then concludes that this “should end our intervention in this matter” because TILA demands absolute compliance. Post at 243. But the dissent’s assumption is misplaced. Sun-Trust’s entire argument on appeal rests on its contention that it did use an appropriate form, complying fully with TILA and Regulation Z. And in our opinion we conclude that it did.

. Despite the specific requirements and exceptions included in TILA and Regulation Z, the dissent maintains that SunTrust "should have provided” notice of rescission with Model Form H-9, implying, without citation, that something in TILA and Regulation Z requires the use of Model Form H-9 for refinancing with an original creditor. But as we point out, nothing in TILA or Regulation Z requires use of Form H-9 or use of the distinct language or information given in Form H-9.