WYNN, Circuit Judge,
dissenting:
“Congress enacted [the Truth in Lending Act] in 1968, as part of the Consumer Credit Protection Act ... to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit....” Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 53-54, 125 S.Ct. 460, 160 L.Ed.2d 389, (2004) (internal citations omitted); see also Mourning v. Family Pub. Serv., Inc., 411 U.S. 356, 377, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973) (“The Truth in Lending Act reflects a transition in congressional policy from a philosophy of ‘Let the buyer beware’ to one of ‘Let the seller disclose[ ]’ ” and, in so doing “Congress expressly sought ‘to ... avoid the uninformed use of credit.’ ”) (quoting 15 U.S.C. § 1601). 15 U.S.C. § 1635 requires creditors to “clearly and conspicuously disclose” the borrower’s rescission rights under the Truth in Lending Act. 15 U.S.C. § 1635(a).
To that end, to enforce the disclosure requirements under the Truth in Lending Act, “Congress gave the debtor a right to specific information and therefore defined ‘injury in fact’ as the failure to disclose such information.” White v. Arlen Realty & Dev. Corp., 540 F.2d 645, 649 (4th Cir.1975). The Truth in Lending Act requires a lender to “clearly and conspicuously” disclose to the borrower the borrower’s right to rescind and the length of the rescission period, as well as to provide the borrower with “appropriate forms ... to exercise [the] right to rescind [a] transac *241 tion.”[1] 15 U.S.C. § 1635(a). Additionally, the Act also requires creditors to disclose the effects of rescission. Regulation Z § 226.23(b)(1).
This Court has held that “to insure that the consumer is protected, as Congress envisioned, requires that the provisions of the Act and the regulations implementing it be absolutely complied with and strictly enforced.” Mars v. Spartanburg Chrysler Plymouth, Inc., 713 F.2d 65, 67 (4th Cir.1983) (holding that technical violation, even if merely a “minor variation in language and type size” from Truth in Lending Act requirements, imposes liability), superseded on other grounds by statute, 15 U.S.C. § 1640(a)(2)(A), Pub.L. 104-12, May 18, 1995, 109 Stat. 161; see also Huff v. Stewart-Gwinn Furniture Co., 713 F.2d 67, 69 (4th Cir.1983) (holding that minor violations of Truth in Lending Act and Regulation Z impose liability even if, as creditor alleged, the consumer “was not misled and was given a meaningful and correct disclosure of crucial credit terms”).
It is important to point out that although this Court, in Am. Mortg. Network, Inc. v. Shelton, 486 F.3d 815 (4th Cir.2007),[2] suggested that the Truth in Lending Act should be “reasonably construed and equitably applied,” that holding did not and indeed could not overrule the binding precedent set by this Court in Mars. See Am. Mortg. Network, Inc., 486 F.3d at 819 n. 4. “[A] panel of this court cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this court. Only the Supreme Court or this court sitting en banc can do that.” Scotts Co. v. United Indus. Corp., 315 F.3d 264, 272 (4th Cir.2002) (citing Mentavlos v. Anderson, 249 F.3d 301, 312 n. 4 (4th Cir.2001)); see also Jones v. Angelone, 94 F.3d 900, 905 (4th Cir.1996) (“we cannot, as a panel of the court, overrule the decision of another panel; only the en banc court may overrule a prior panel decision”).
In Mars, this Court held that the Truth in Lending Act and its regulations must “be absolutely complied with and strictly enforced.” Like our holding in Mars, other circuit courts have also required that the Truth in Lending Act and its regulations be absolutely complied with and strictly enforced. See Handy rv. Anchor Mortg. Corp., 464 F.3d 760, 764 (7th Cir.2006) (“Truth in Lending Act does not *242 easily forgive ‘technical’ errors.”) (quotation marks omitted); Smith v. Fid. Consumer Disc. Co., 898 F.2d 896, 898 (3rd Cir.1990) (“Once the court finds a violation, no matter how technical, it has no discretion with respect to liability.”) (quotation omitted); Semar v. Platte Valley Fed. Sav. & Loan Ass’n, 791 F.2d 699, 704 (9th Cir.1986) (“Technical or minor violations of [Truth in Lending Act] or Reg Z ... impose liability on the creditor and entitle the borrower to rescind.”); Williamson v. Lafferty, 698 F.2d 767, 768-69 (5th Cir.1983) (holding that the failure to fill in rescission expiration date violates the Truth in Lending Act).
The Truth In Lending Act provides that the Federal Reserve Board:
... shall publish model disclosure forms and clauses for common transactions to facilitate compliance with the disclosure requirements of this title [15 USCS §§ 1601 et seq.] and to aid the borrower or lessee in understanding the transaction by utilizing readily understandable language to simplify the technical nature of the disclosures.... Nothing in this title [15 USCS §§ 1601 et seq.] may be construed to require a creditor or lessor to use any such model form or clause prescribed by the Board under this section.
15 U.S.C. § 1604(b). The Federal Reserve Board, in promulgating regulations under this statute, recognized that the statute offered the lender the options of using the model disclosure forms or devising its own form to meet the disclosure requirements. Those regulations further emphasized the safe-harbor value of using the model disclosure forms under 12 C.F.R. § 226.23(b)(2), which has the force of law. That regulation provides that a lending institution shall disclose the right to rescind to the borrower through a “notice of a right to rescind” in two ways:
1) provide the “appropriate model form in Appendix H”; or
2) provide “a substantially similar notice.”
See 12 C.F.R. § 226.23(b)(2).
By choosing to use the appropriate model disclosure form method, both the lender and borrower are put on notice that the form itself “shall be deemed to be in compliance with the disclosure provisions of [the Truth in Lending Act].” 15 U.S.C. § 1604(b) (emphasis added). Furthermore, in choosing the appropriate model disclosure form method, the lender has but one duty to fulfill to be deemed in compliance with the Truth in Lending Act — use the “appropriate model form.”
To that end, the extensive analysis of the majority in determining if the disclosure requirements of the statute are met by SunTrust, which chose to use the appropriate model disclosure form method, seems beside the point. Indeed, the intervention of the judiciary should be quite limited and efficient when a lender chooses the appropriate model disclosure form method, for the inquiry need only concern whether a lender chose the appropriate form. If so, then the lender is deemed in compliance; if not, then it is not in compliance with the statute.
On the other hand, if a lender chooses to use the substantially similar notice method, then the document that it chooses to devise must meet the disclosure requirements of the statute. In that instance, an analysis such as the majority’s would be necessary to determine if the devised document met the statutory disclosure requirements.
Here, SunTrust chose to use the “appropriate model form in Appendix H” disclosure method rather than to devise its own form to provide “substantially similar notice” required under the Truth In Lending *243 Act. Thus, the dispositive issue on appeal is whether a lender that chooses to use the “appropriate model form in Appendix H” must use the appropriate form to comply with the Truth in Lending Act. Certainly yes. As it is undisputed that SunTrust did not use the appropriate model form, it follows that SunTrust was not in compliance with the Truth in Lending Act. It is a simple and straightforward result that is readily understood by both the lender and borrower. In short, the intervention of courts should end when it is determined that a lender who chose to use the appropriate model disclosure form method used the wrong form.
That was exactly the level of judicial restraint that the Seventh Circuit exercised in Handy. There, the Seventh Circuit noted that even the lender’s simultaneous provision of both a Form H-8 and a Form H-9 did not meet Truth in Lending Act’s clear and conspicuous disclosure requirement, especially with regard to the “effects of rescission.” Id. at 464 F.3d at 764. In Handy, the lender provided the borrower, at the time of her closing on a home loan, four copies of Form H-9 and one copy of Form H-8. The plaintiff argued that because the lender provided two different forms to her, the lender had failed to clearly and conspicuously disclose her right to rescind the transaction. In agreeing with the plaintiff, the Seventh Circuit explained:
Even if Anchor is correct that a close parsing of Form H-9’s “effects of rescission” statement might make it possible to reconcile it with the type of loan extended to Handy, the notice provided remains insufficient for Anchor to prevail. Where more than one reading of a rescission form is “plausible,” the form does not provide the borrower with a clear notice of what her right to rescind entailfs].
Id. (quoting Porter v. Mid-Penn Consumer Disc. Co., 961 F.2d 1066, 1077 (3rd Cir.1992)).
Here, the fact that SunTrust did not use the appropriate model form to provide notice to the Watkinses is undisputed. SunTrust chose form H-8, which is the “appropriate model form in Appendix H” promulgated by the Federal Reserve Board for new borrowers, rather than form H-9, which is the “appropriate model form in Appendix H” for “(Refinancing (loith Original Creditor).” See 12 C.F.R. § 226, Appx. H-8, H-9 (emphasis added). Because the Watkinses were existing borrowers, SunTrust failed to use the appropriate model form to provide notice to the Watkinses as existing borrowers. It follows that SunTrust failed to absolutely comply with the disclosure provisions of the Truth in Lending Act.
As stated earlier, that should end our intervention in this matter. But even if we opt to interject additional unnecessary judicial action by analyzing whether the wrong form used under the “appropriate model form” disclosure method nonetheless met the “substantially similar notice” requirements, we would be constrained to hold that SunTrust has violated the Truth in Lending Act.
Here, the wrong form used by SunTrust under the “appropriate model form” disclosure method was Model Form H-8. Model Form H-8, which is for new borrowers, wrongly set forth the consequences that the Watkinses, as existing borrowers, would face if they chose to cancel the transaction within three business days. Model Form H-8 states:
Your Right to Cancel.
You are entering into a transaction that will result in a mortgage, lien or security interest on/in your home. You have a legal right under federal law to cancel this transaction without cost, within *244 three (3) business days from whichever of the following events occurs last:
(1) the date of the transaction, which is; May 7, 2007; or
(2) the date you received your Truth in Lending disclosures; or
(3) the date you received this notice of your right to cancel.
If you cancel the transaction, the mortgage, lien or security interest is also canceled. Within (20) calendar days after we receive your notice we must take steps necessary to reflect the fact that the mortgage, lien, or security interest on/in your home has been canceled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.
12 C.F.R. § 226, Appx. H-8 (emphases added). Thus, the Model H-8 Form wrongly informed the Watkinses that if they exercised their right to rescind, Sun-Trust would rescind the entire credit transaction, and the entire lien on the Watkinses’ home. This was clearly an incorrect disclosure.
In contrast, the appropriate model disclosure form that Sun-Trust should have provided is Model Form H-9, which is the appropriate model form for a new extension of credit by an existing lender. Model Form H-9 states:
Your Right to Cancel
You are entering into a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction. You have a legal right under federal law to cancel this new transaction, without cost, within three business days from whichever of the following events occurs last:
(1)the date of this new transaction, which is May 7, 2007; or
(2) the date you received your new Truth in Lending disclosures; or
(3) the date you received this notice of your right to cancel.
If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure the increase of credit. We must also return any money you have given to us or anyone else in connection with this new transaction.
12 C.F.R. § 226, Appx. H-9 (emphases added). Thus, Model Form H-9 would have correctly informed the Watkinses that if they exercised the right to rescind, then only the new extension of credit would be rescinded, leaving unaffected the prior lien of the pre-existing mortgage loan. Clearly, the borrower’s right of rescission in a refinancing transaction with the same lender is substantially different from the right of rescission contained in the notice of cancellation that SunTrust provided to the Watkinses.
In sum, this case is a simple case requiring only judicial restraint to follow: the clear language and policy directions of Congress in enacting the Truth in Lending Act; the simple regulations of the Federal Reserve Board in providing a choice between using the safe-harbor method or devising a document to meet the Truth in Lending Act requirements; and the unequivocal and controlling holding of our decision in Mars. An analysis of whether the incorrect form used here was in substantial compliance is not warranted because Sun-Trust chose to use the appropriate model disclosure form method and failed to use the appropriate form. But not only did SunTrust violate the Truth in *245 Lending Act by providing the wrong form to the Watkinses, the wrong form itself failed to meet the requirements of the “substantially similar notice” method (which SunTrust did not choose in any event). It follows that SunTrust failed to meet the requirements of the Truth in Lending Act, which we held under Mars must be “absolutely complied with and strictly enforced.”[3] Accordingly, I respectfully dissent.

. Two footnotes in the majority opinion appear to suggest that there is a dispute as to whether SunTrust used the "appropriate form” in providing notice to the Watkinses. But neither the majority nor SunTrust disputes the underlying premises that Form H-9 is designed for existing borrowers; SunTrust provided the Watkinses notice by providing Form H-8 which is designed for new borrowers; and the Watkinses were existing borrowers. The dispute, if any, lies in the conclusion that arises from those premises. Whereas the majority holds that the notice provided by Form H-8 is close enough to meet the disclosure requirements of the Truth in Lending Act, this Court in Mars v. Spartanburg Chrysler Plymouth, Inc., 713 F.2d 65, 67 (4th Cir. 1983), made it plain that the Truth in Lending Act requires strict compliance. But, tellingly, the majority ignores our binding and controlling decision in Mars by not even citing to it.

. Unlike the present case, Shelton was an action concerning the procedural requirements for exercising the right to rescind. The issue in Shelton was whether the lender had an obligation to return the borrower’s property per the Truth in Lending Act deadlines after the lender learned that the borrowers were unable to tender the loan proceeds to the lender. We affirmed the grant of summary judgment in favor of the lender because "[o]nce the trial judge ... determined that [plaintiffs] were unable to tender the loan proceeds, the remedy of unconditional rescission was inappropriate.... [And, consequently,] [t]he trial court properly exercised its discretion in denying rescission.” Shelton, 486 F.3d at 821.

. It is worthwhile to note that holding the lender accountable for providing the wrong Model Disclosure Form would not mean that the borrower escapes liability on the principal of the loan. Under 15 U.S.C. § 1635(b), when a borrower rescinds, he is "not liable for any finance or other charge”; "any security interest ... becomes void"; and "[wjithin 20 days after receipt of a notice of rescission,” the lender must "return to the [borrower] any money or property given as earnest money, down payment, or otherwise.” 15 U.S.C. § 1635(b). In other words, although the borrower would be required to make payment to the lender for the loan's principal, the lender would not benefit from its own mistake by continuing to receive additional interest payments from the borrower. See 15 U.S.C. § 1640(a). By ignoring the consequences of the two choices under the Truth in Lending Act as expressed by regulation, the result reached by the majority not only ensures a regulatory windfall to the lender, but it also undermines the strong policy considerations that underlie the Truth in Lending Act.